WITHERS et al. v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department.   March 11, 1904.)

1. MUNICIPAL CORPORATIONS—PUBLIC BUILDINGS—CONSTRUCTION—ARCHITECTS —EMPLOYMENT—RATIFICATION.

   Where the commissioner of correction of the city of New York appointed plaintiffs as architects to prepare plans and specifications and to supervise the construction of an addition to the city prison before Laws 1896, p. 751, c. 626, giving the commissioner authority to make such appointment, went into effect, but thereafter the commissioner accepted plaintiffs' plans and specifications and supervision of the work, such acceptance constituted a ratification of plaintiffs' employment.

2. SAME—STATUTES—CONSTRUCTION.

   Laws 1896, p. 751, c. 626, § 2, provides that the commissioner of correction and the board of estimate and apportionment are each authorized to employ a competent architect to prepare or examine any plans for work proposed to be done under the provisions of the act; and section 4 declares that for the purpose of carrying out such work, including the compensation of architects employed by the commissioner of correction to prepare plans and specifications and to supervise the work done thereunder, and for the architect employed by the board of estimate and apportionment to examine any plans and specifications, the city comptroller is directed to issue consolidated stock, etc. Held, that under such sections the commissioner of correction had power to employ architects not only to prepare plans and specifications, but to supervise the work during its progress.

3. SAME—TERM OF EMPLOYMENT.

   Where architects were employed by the commissioner of correction to prepare plans and specifications and supervise the work of the construction of an addition to the city prison, as authorized by Laws 1896, p. 751, c. 626, without any agreement as to the length of their service, the term of their employment should be regarded as terminating on the completion of the building.

4. SAME—APPROVAL OF PLANS.

   Laws 1896, p. 751, c. 626, providing for the rebuilding of the New York City prison, authorizes the commissioner of correction to employ an archi-

   86 N.Y.S.—70

tect to prepare plans and specifications, etc., and section 3 declares that when any work provided for by the act shall have been authorized, and the plans and specifications therefor approved by the board of estimate and apportionment, the commissioner of correction shall proceed to execute and carry out the work, which shall be done by contract. *Held* that, where plaintiffs, employed by the commissioner to prepare plans and supervise the work, were removed, and it did not appear that any of plaintiffs' work done after their removal had been approved by the board of estimate and apportionment, they were not entitled to recover therefor.

5. SAME—COMPENSATION—AMOUNT—QUESTION FOR JURY.

In an action for architects' services, whether plaintiffs' compensation had been fixed at 5 per cent. of the estimated cost of the building *held* a question for the jury.

Appeal from Trial Term, New York County.

Action by Frederick C. Withers and another against the city of New York. From a judgment in favor of plaintiffs, and from an order denying a motion for a new trial, defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

Terence Farley, for appellant.
Albert Stickney, for respondents.

VAN BRUNT, P. J. This action was brought to recover damages for an alleged breach by the defendant of a contract of employment of the plaintiffs as architects to prepare plans and specifications and to supervise the construction of the new wing and other additions to the city prison. The main questions presented upon this appeal are the claim upon the part of the city of the want of power in the commissioner of correction to appoint architects in reference to the building of the new wing and other additions to the city prison whose employment should continue beyond the term of office of the commissioner, and that the appointment of the plaintiffs by the commissioner of correction on the 27th day of April, 1896, was illegal, in that the act under which the appointment was made did not go into effect until May 13, 1896. In respect to the latter objection, it is sufficient to say that the subsequent action of the commissioner in reference to the connection of the plaintiffs with the work in question, the acceptance of their plans and specifications, and their supervision of the work, was clearly a ratification of the appointment made on the 27th of April, 1896, although such appointment was made prior to the time when the act in question went into effect. The provisions of the act under which the appointment was made (chapter 626, p. 751, of the Laws of 1896) which relate to the questions involved in this action read as follows:

"Section 1. The commissioner of correction in the city of New York, with the consent and approval of the board of estimate and apportionment of said city, expressed as hereinafter provided, is hereby authorized and empowered to erect * * * such addition to and extension of existing buildings, under the jurisdiction and control of the department of correction * * * as, in the opinion of said commissioner of correction and of said board of estimate and apportionment, shall be necessary for the proper maintenance * * * of the criminals * * * including in the discretion of said commissioner and said board of estimate and apportionment the rebuilding or extension of the present city prison, known as the 'Tombs.'

"Sec. 2. Before proceeding to * * * make any alterations or improvements as authorized by the last preceding section, the said commissioner of correction may, from time to time, present to the said board of estimate and apportionment a statement of any work proposed to be done, with plans and specifications therefor, and an estimate of the approximate probable cost thereof, whereupon the said board of estimate and apportionment may, by resolution, authorize said work to be done wholly or in part, and may approve the plans and specifications therefor, or may return the same to said commissioner for modification or alteration, * * * and said plans and specifications may be so returned to said commissioner and resubmitted to said board of estimate and apportionment until the said board of estimate and apportionment shall, by resolution, approve said plans and specifications and authorize the work to be proceeded with accordingly. The said commissioner of correction and the said board of estimate and apportionment are each hereby authorized to employ a competent architect to prepare or examine any plans for any work proposed to be done under the provisions of this act. * * *

"Sec. 3. When any work provided for by this act shall have been authorized, and the plans and specifications therefor approved by the board of estimate and apportionment, the said commissioner of correction shall proceed to execute and carry out said work, which shall be done by contract. * * *

"Sec. 4. For the purpose of carrying out the work authorized by this act, including the compensation of the architects employed by said commissioner of correction to prepare plans and specifications and to supervise the work done thereunder and of the architect employed by the board of estimate and apportionment to examine any plans and specifications, * * * the comptroller of the city of New York is hereby directed, from time to time, when thereto directed by the board of estimate and apportionment, to issue consolidated stock."

It seems to have been contemplated by this act that the commissioner of correction, and also the board of estimate and apportionment, were each empowered to employ a competent architect to prepare or examine any plans for any work proposed to be done under the provisions of the act; and that it was intended that the commissioner of correction should have additional power, namely, to employ an architect to supervise the work done thereunder, which was a necessary power to be lodged somewhere, as is evidenced by section 4 of the act in question, which, as above stated, provides that "for the purpose of carrying out the work authorized by this act, including the compensation of the architects employed by said commissioner of correction to prepare plans and specifications and to supervise the work done thereunder, and of the architect employed by the board of estimate and apportionment to examine any plans and specifications," the comptroller was directed to issue consolidated stock. It will thus be seen that, while the provision for the payment of the architect employed by the board of estimate and apportionment was limited to the work of examining the plans and specifications, the provision for the payment of the architect employed by the commissioner of correction was not only for the preparation of plans and specifications, but for supervision of the work done thereunder; there being a clear distinction between the duties which were to be performed by the architects employed by the board and those employed by the commissioner. It would seem, therefore, that under the act itself the commissioner had the power to employ the plaintiffs not only to prepare plans and specifications, but to supervise the work, which meant the work during its progress.

But it is claimed that, where authority is given to a municipality or official board to contract, without any specification of the term, the

municipality or board can contract only for a reasonable period, to be determined usually by the tenure of office of the official board. We do not think that the rule sought to be invoked has any application to the case at bar. Here was a municipal building to be erected. The necessity for the appointment of architects for the purpose of preparing plans and specifications and supervising the work is recognized by the statute. The employment was one having a specific object, and would necessarily terminate upon the completion of the buildings which were to be erected under the authority of the statute. There is no reason why a contract of employment in reference to this specific work until its completion should not be entered into, any more than any other contract in connection with any public building, the erection of which is liable to extend beyond the term of office of the individual members of the board authorized to make the contract.

There seems, however, to be a difficulty in the way of sustaining the recovery of the plaintiffs in this action in the fact that there is no evidence that any of the plans and specifications of the plaintiffs in respect to the work which was done after their removal had ever been approved by the board of estimate and apportionment. While it may be true that the commissioner of correction had the power to appoint a competent architect to prepare the plans, yet, until those plans were approved by the board of estimate and apportionment, he had no power to go any further with the work, or to employ any person to supervise the same during its construction. Section 3 provides that, when any work provided for by the act shall have been authorized, and the plans approved by the board of estimate and apportionment, the commissioner of correction shall proceed to execute and carry out said work, which was to be done by contract. There is an express separation throughout the whole of the act between the primary work of preparing plans and specifications and the doing of the work after such plans had been approved and the work authorized. In the case at bar there is no evidence whatever that the plans and specifications of the plaintiffs in reference to this new work were ever approved and accepted by the board of estimate and apportionment, which was a prerequisite to the authority of the commissioner to proceed with the work, or to incur any expenditure in connection therewith.

There is another objection which seems to be fatal to the recovery, and that is to the charge of the court that the plaintiffs were entitled to a verdict of 5 per cent. on the amount of the estimated cost, less the amount which they would have expended in carrying out the contract. This instruction was excepted to. We think that under the evidence there was a question for the jury as to whether there was any agreed compensation or not. One of the plaintiffs testified to a conversation with Mr. Wright, in which he stated that they were to get 5 per cent., the usual price. Mr. Wright testified as to this 5 per cent. that he did not know that anything was said about the percentage at all, and he added, "I assume that he would get the regular percentage." The claim being made that the plaintiffs sought to recover upon an agreed percentage, this condition of the evidence left the question for the jury upon that point.

We are of opinion, therefore, that the judgment and order should be reversed, and a new trial ordered, with costs to the appellant to abide event. All concur; INGRAHAM, J., in result.