Argued April 6, reversed May 24, rehearing denied July 6, 1927.

JOSEPH JACOBBERGER v. SCHOOL DISTRICT No. 1.

(256 Pac. 652.)

**Schools and School Districts—School Districts are Political Subdivisions of State, Deriving Powers from and Subject to Liabilities Imposed Under Statutes.**

1. School districts are political subdivisions of the state created by, deriving their powers from, and subject to liabilities imposed by, the general statutes.

1. See 24 R. C. L. 562.

**Municipal Corporations—Municipal Officers Exercising Governmental Powers cannot Bind Corporation Beyond Terms of Office.**

2.   Municipal corporations have two classes of powers, governmental, in the exercise of which their officers may not bind them beyond their terms of office, and business or proprietary in the exercise of which they are governed by the same rules as individuals or private corporations.

**Schools and School Districts—Employment of Architect for Entire Building of Which Only Part was to be Erected at Time Held Reasonable Exercise of Board's Authority (Or. L., §§ 5152, 5187, 5202, 5205, 5208).**

3.   Act of school board in district of the first class in employing architect for entire building of which only portion was needed and to be erected at time *held* reasonable exercise of authority, under Sections 5152, 5187, 5202, 5205, 5208, Or. L., relating to powers and duties of school districts and boards, though voters had not at the time of the contract authorized tax necessary for entire structure.

**Schools and School Districts—Architect's Contract With School District was not Invalidated by Delay in Building Caused by War Conditions.**

4.   Architect's employment contract with school district for services in planning and supervising entire school building was not invalidated by war conditions which caused delay in carrying out contemplated construction.

**Contracts—Law Does not Favor Repudiation of Contracts.**

5.   The law does not favor repudiation of contracts.

**Schools and School Districts—Directing Verdict for Defendant School District Held Error, Under Evidence District Breached Plaintiff Architect's Valid Employment Contract.**

6.   Under evidence indicating that school district, by action of the board of directors, breached plaintiff architect's valid employment contract entered into by a former board, *held* error to direct verdict for the defendant.

**Schools and School Districts—Architect's Complaint for Damages for Breach of Executory Employment Contract Held Sufficient Without Alleging Unascertained Construction Cost.**

7.   Complaint of architect, suing school district for damages for breach of executory employment contract under which his compensation was to depend partly on actual cost of work, *held* sufficient, though it did not allege actual cost which at that time had not been ascertained.

**Schools and School Districts—Board's Authority to Employ Architect for School Building Held Limited by Reasonableness, Good Faith, and Statutes (Or. L., §§ 5152, 5187, 5202, 5205, 5208).**

8.   Limitation on authority of board of directors of school district of first class to employ architect for erection of entire building in

4.   Rights of parties to contract, the performance of which is interfered with by war conditions, see notes in 3 **A. L. R.** 21; 9 **A. L. R.** 1509; 11 **A. L. R.** 1429; 15 **A. L. R.** 1512.

separate units of which the third unit was to be deferred *held* reasonableness and good faith in addition to limitations imposed by Sections 5152, 5187, 5202, 5205, 5208, Or. L.

**Contracts—Architect on Breach of Employment Contract has Election of Remedies on Quantum Meruit, on Contract, and for Damages.**

9. On repudiation of contract for his services, architect has election of remedies on *quantum meruit,* under the contract by keeping it alive by his readiness and ability to perform, and for damages.

**Schools and School Districts—Inexpediency of Completing School Building Because of Building Costs Would not Relieve District for Contractual Liability to Architect.**

10. Inexpediency of completing school building by reason of high cost of labor and materials would not relieve school district of liability to architect, under contract.

**Contracts—One Party cannot, by Act or Declaration, Destroy Force of Contract.**

11. One party cannot, by act or declaration, destroy the binding force of a contract.

**Schools and School Districts—Architect's Acting on Contract for Services Held Indication He Accepted School District's Proposition.**

12. Architect's acting on contract for services in planning and supervising construction of school building indicated that the proposition made by district and entered in the board's minutes was accepted by him.

---

Contracts, 13 **C. J.**, p. 275, n. 72, p. 601, n. 37, p. 615, n. 87, 88, p. 651, n. 57, p. 653, n. 63.
Municipal Corporations, 28 **Cyc.**, p. 655, n. 86, 87 New.
Schools and School Districts, 35 **Cyc.**, p. 832, n. 81, p. 833, n. 87, p. 952, n. 1 New.

From Multnomah: ROBERT G. MORROW, Judge.

Department 1.

Plaintiff appeals from a judgment rendered upon a verdict of the jury directed by the Circuit Court of Multnomah County in favor of defendant in an action for an alleged breach of a contract entered into by the parties about April 12, 1911, by the terms of which the defendant employed plaintiff as architect in a formal written offer made by the defendant in

---

11. See 6 **R. C. L.** 921, 922.

pursuance of a resolution of its board of directors and accepted.  The resolution is as follows:

"That Joseph Jacobberger be employed as architect to design and superintend the construction of the new Rose City Park School Building, eight rooms of which are to be erected this year, and that he be paid a total of 5% commission for his work on the following terms:

"Two per cent on the estimated cost of the entire building when plans for entire building are accepted.

"Three per cent as the units of the building are built."

At the annual school meeting on December 28, 1910, the voters of School District No. 1, Multnomah County authorized a tax in an amount necessary to erect an eight-room schoolhouse.

REVERSED.  REHEARING DENIED.

For appellant there was a brief and oral argument by *Mr. Robert J. O'Neil.*

For respondent there was a brief and oral arguments by *Mr. Stanley Myers,* District Attorney and *Mr. Samuel H. Pierce,* Deputy District Attorney.

BEAN, J.—The plaintiff entered upon the performance of his contract and designed and prepared plans and specifications which were accepted by the defendant, and the amount due upon the acceptance thereof in accordance with the contract was paid to plaintiff.  The defendant, School District, proceeded with the erection of two units of the school building, one soon after the contract was made in 1911 and one in the year 1914.  It appears that thereafter the completion of the building was delayed on account of the World War conditions when the money to build

schoolhouses could not be obtained. These two units were constructed under the supervision of plaintiff as architect, and defendant paid plaintiff for such supervision in accordance with the terms of the contract.

After the war conditions had passed, the board of directors proceeded to construct the third unit. In 1920 plaintiff made an estimate of the then cost of the third unit. About May 6, 1921, the board of directors declared their decision to complete the remaining unit, or north wing of the building, and to proceed with the architectural work without the assistance of the plaintiff. Plaintiff was notified accordingly. Thereafter plaintiff presented a claim to the board of directors of the district on account of a breach of the contract, which claim was rejected by the board.

The defendant by its answer recites the fact of the passing of the resolution, making plans and specifications for the Rose City Park school building by plaintiff, and the supervision of the construction of two units thereof, and alleges that the board of directors, as then constituted, did not then contemplate or provide for the construction of additional units to the building. Defendant further avers that the term of the board of directors of the district on April 12, 1911, had long since expired prior to May 6, 1921, and the board had been succeeded by other boards; that the resolution passed by the former board of directors, as related to the construction of the north wing of the Rose City Park School building, was wholly unreasonable and legally fraudulent and void; that the then board of directors were not authorized by a vote of the legal electors of the district to con-

struct said north wing and did not provide funds for the construction thereof.

Upon the trial of the case plaintiff introduced testimony to the effect that the estimated cost of completing the third unit of the building in May, 1921, was $71,000. No testimony was introduced on this point by defendant.

1. School districts are a political subdivision of the state. They are sometimes termed *quasi*-municipal corporations. They owe their creation to the general statutes of the state, and the statutes confer upon them all the powers they possess, prescribe all the duties they owe and impose on them liabilities to which they are subject: *State* v. *School Dist. No. 3,* 78 Or. 188 (152 Pac. 221); *Richards* v. *School Board,* 78 Or. 621 (153 Pac. 482, Ann. Cas. 1917D, 266, L. R. A. 1916C, 789); note, 16 L. R. A. 257.

Section 5152, Or. L., declares, in effect, that all school districts shall be to all intents and purposes bodies corporate, competent to transact all business coming under their jurisdiction and to sue and be sued. School District No. 1 of Multnomah County is a district of the first class.

Section 5187, Or. L., provides that the duties of the district school board in district of the first class shall be:

"(6) To lease and build schoolhouses, to buy and lease lands for school purposes, and to furnish their schoolhouses with proper furniture, libraries, light, fuel, apparatus, etc., and to sell and convey such lands and other property belonging to the district as may not, in their judgment, be required for school purposes:"

See L. O. L., § 4102. This subdivision of the section was enacted in 1901. See Gen. Laws Or. 1901, p. 63, § 68, subd. 6.

Section 5202, Or. L., which is a part of the act of 1901, provides as follows:

"The board of directors of such district are authorized to contract an indebtedness for the district for school purposes, but such indebtedness shall at no time exceed in the aggregate more than $100,000; provided, that in cities of less than seventy-five thousand inhabitants, they shall not contract any indebtedness exceeding five per centum of the value of the taxable property of the district." See L. O. L., § 4109.

Amplifying this law the legislature later authorized the board of directors of first class districts to levy a tax, by the enactment of Chapter 180, of the Laws of 1919, Section 1, which is Section 5208, Or. L., which reads thus:

"The district school board of a school district of the first class shall have the power to levy a tax once each year upon all real and personal property in such school district for the maintenance, operation and support of the public school system of said district."

By virtue of the provisions of Section 5205, which is the act of 1901, the mode and manner and the times for assessing and collecting the taxes in districts of the first class was the same as theretofore provided by law.

It is contended by plaintiff that his contract with defendant came within the business or proprietary powers of the board of school directors in the exercise of which such board is governed by the same rules as individuals or private corporations; that the

fact that the building was to be constructed in units at such time as the board might determine did not make the contract with plaintiff one extending over a term of years for personal services generally, but was merely a part of the work of erecting the building, the time for which was left entirely to the board of directors.

It is contended on behalf of the school district that so far as the former board attempted to contract with the plaintiff for services reaching beyond a period of time for which the members had been elected the action was *ultra vires* and void, and would not bind their successors in office; that the alleged agreement between the plaintiff and the former board was so indefinite and uncertain, in so far as it related to the building of the third or north unit, as to be unreasonable and legally fraudulent and void; that under the school law in 1911 the building of schoolhouses, and the appropriation of money thereof, were initiated by the voters of the district and the only authority of the board of directors was that granted by the voters at such meeting; that the board's authority in the matter of building contracts was limited to the expenditures of funds appropriated and available for the purpose.

2. Municipal corporations have two classes of powers, the one governmental, in the exercise of which their officers may not bind the municipalities beyond the terms of their office, and the other business or proprietary, in the exercise of which they are governed by the same rules as individuals or private corporations: *Omaha Water Co.* v. *City of Omaha,* 147 Fed. 1, 5 (8 Ann. Cas. 614, 12 L. R. A. (N. S.) 736); *City of Biddeford* v. *Yates,* 104 Me. 506 (72 Atl. 335, 339, 15 Ann. Cas. 1091); *First Nat. Bank* v.

*Emmetsburg,* 157 Iowa, 555 (138 N. W. 451, 455, L. R. A. 1915A, 982); *Webb* v. *Spokane Co.,* 9 Wash. 103, 104, 106 (37 Pac. 282); *Rockhill Iron & Coal Co.* v. *City of Taunton,* 273 Fed. 96.

The rule contended for by defendant might well apply to districts of the lower classes. It is plainly written in the statute that the law-makers of the state in their wisdom evinced and provided for a plan to authorize school districts of the first class, like the defendant in the metropolis of the state, through their board of directors, to plan and provide for school facilities without being hampered on account of lack of authority as the smaller districts were. Hence the enactment of Section 5202 enabling the board of directors of such a district to contract an indebtedness not exceeding $100,000 for school purposes. Thus was a district of the first class authorized to plan school buildings for the future and incur any reasonable expense, and to make contracts for the commencement of construction of a school building and plans and specifications for the whole building including the concomitant of carrying out the plans, by a supervision of the construction of the entire building.

3. To hold that the act of the school board was an unreasonable exercise of its authority in making the contract with plaintiff would be to cripple such district and require them, when it is found that a schoolhouse is too small for the accommodation of the district, to tear down and build larger, or pursue some method without the benefit of a systematic plan evolved in the first instance when the building is first planned. That such a school building with two wings may judiciously be planned and provided for in the

future to be built as soon as the needs require and the circumstances permit without infringing any public policy, witness the construction of modern school buildings, and also state buildings in this state. What public policy could such a procedure possibly contravene? We are constrained to hold that the contract when made was valid.

It is in evidence that the first two units of the building were constructed a little in advance of the immediate needs. The third or north unit was on account of the circumstances named delayed until a "flock" of portable substitutes were used to house the children.

4. In *Rush* v. *School District,* 78 Or. 435, 437 (153 Pac. 59), it was held, Mr. Justice BENSON speaking for this court, that a contract which is valid at the time of its execution could not be invalidated by subsequent events over which the plaintiff, a party to the contract, had no control. We think this principle is sound and applicable to the contract in question. See, also, *Levy* v. *McClellan,* 196 N. Y. 178 (89 N. E. 569). Note to *Hogan* v. *Comm. Court,* 37 L. R. A. (N. S.) 1062.

5, 6. The plaintiff had no control over the occurrence which delayed the carrying out of the contract which was apparently made in good faith by the parties thereto, and no good reason is pleaded or shown why the contract should not be enforced. It is not suggested that the district had incurred indebtedness beyond the statutory limit. The law does not favor the repudiation of contracts. The testimony indicated that the district breached its contract and that the plaintiff was entitled to recover the contract price of 3 per cent of the cost of the third unit of

the building, less the cost and expense that he would have been subjected to in supervising construction of the third unit: *Isreals* v. *MacDonald*, 123 App. Div. 63 (107 N. Y. Supp. 826).

7. At the time the case was tried the cost of the last wing had evidently been determined. It may have been more or less than the estimated cost. It would not be a hardship under ordinary circumstances to obtain the figures, although at the time the complaint was filed that amount had not been ascertained and therefore could not be alleged. We think the complaint is sufficient in this respect. It was error for the court to direct a verdict in favor of defendant.

We quote the syllabus in *Withers* v. *City of New York*, 92 App. Div. 147, 148 (86 N. Y. Supp. 1105):

"That the employment by the commissioner of correction of an architect for the purpose of preparing plans and specifications and of supervising the work would terminate upon the completion of the work, and not upon the expiration of the term of office of the commissioner of correction."

In *Marquis* v. *Lauretson*, 76 Iowa. 23 (40 N. W. 73), the syllabus, which tersely expresses the gist of the opinion, reads thus:

"An architect's contract was to prepare plans and specifications, superintend work, and audit and settle all accounts. He was to be paid one third of the contract price when the plans and specifications were done, and the rest in two other equal installments. The building was never begun. Held, that the contract price was entire and that he was entitled to recover the reasonable value of the services rendered, though that amounted to more than one third of the whole price."

The board of directors of the defendant district did not have "very limited" powers like those mentioned in the case of *School District* v. *Stough*, 4 Neb. 357, and other cases cited by counsel for defendant. Its powers are broad but limited, of course, by the statute conferring them either expressly or by fair implication. The defendant district was not wanting in power or authority to make the contract in suit.

8. Counsel for defendant rely upon the case of *Davis* v. *Public Schools of Escanaba*, 175 Mich. 105 (140 N. W. 1001). That was a case where the authority of a board to hire a superintendent of schools for a period of time, extending beyond the term of office of its members. The case differs from the one at bar in contracting with an architect for plans and specifications of an entire school building contemplated and built in three units. In the Michigan case it was held that the only limits to the exercise of the power of the board to employ a superintendent of schools were "those fixed by reasonableness and good faith," and that the questions of reasonableness and good faith, on the part of the board, were for the jury. This principle may well be applied in enforcing the contract in question in the present case.

9. Where a party repudiates a contract made with an architect for services to be performed by him and refuses longer to be bound by its terms, the injured party has an election to pursue either of three remedies:

"(1) He may treat the contract as rescinded, and recover upon *quantum meruit* so far as he has performed; or (2) he may keep the contract alive for the benefit of both parties, being at all times himself ready and able to perform, and at the end of the time specified in the contract for performance, sue

and recover under the contract; or (3) he may treat the repudiation as putting an end to the contract for all purposes of performance, and sue for the profits he would have realized if he had not been prevented from performing." *Krebs Hop Co.* v. *Livesley,* 59 Or. 574, 579 (114 Pac. 944, 118 Pac. 165, Ann. Cas. 1913C, 758).

See 17 C. J., § 93, p. 762. The plaintiff in this case elected to adopt the third remedy mentioned and has brought action for the profits which he alleges he would have realized if he had not been prevented from performing the contract. Lord CAMPBELL said in *Hochester* v. *De La Tour,* 2 El. & Bl. 678, "it cannot be laid down as a universal rule that, where by agreement an act is to be done on a future day, no action can be brought for a breach of the agreement till the day for doing the act has arrived."

10–12. The decision for delay in constructing the third unit of the building on account of the high cost of labor and material making it expedient to postpone the completion of the building would not relieve the district from liability on its contract. Upon reason and authority one party cannot, by any act or declaration, destroy the binding force of a contract: *Kadish* v. *Young,* 108 Ill. 170, 176 (43 Am. Rep. 548); 24 Am. & Eng. Ency. Law (2 ed.), 1084. The contract in question was somewhat general in the terms so far as written, but there was not much dispute in regard thereto. The acting upon the contract by plaintiff indicated that the proposition made by the district and entered in the minutes was accepted by him.

The issues in the case should have been submitted to the jury under appropriate instructions. The

judgment is reversed and the cause will be remanded for a new trial.

REVERSED AND REMANDED. REHEARING DENIED.

BURNETT, C. J., and BROWN and COSHOW, JJ., concur.