Argued November 1, 1960, affirmed in part; reversed in
part March 1, 1961

# VENDRELL *v.* SCHOOL DISTRICT NO. 26C, MALHEUR COUNTY ET AL

360 P. 2d 282

*Wendell Gronso,* Burns, argued the cause for appellant. On the brief were Cramer & Gronso, Burns.

*James A. Cox,* Ontario, argued the cause for respondents. With him on the brief were Yturri & O'Kief, Ontario.

Before McALLISTER, Chief Justice, and ROSSMAN, PERRY, SLOAN, O'CONNELL, GOODWIN and KING, Justices.

O'CONNELL, J.

This is an action to recover damages for personal injuries suffered by plaintiff during the course of a football game between Nyssa high school and the Vale high school, in which plaintiff was a participant as a member of the Nyssa high school team. The action is brought against the school district as a corporate entity, the individual members of the board of directors of the district in their official capacity as board members, the superintendent of schools, and the principal of Nyssa high school. The coach of the Nyssa football team was not made a party defendant.

Plaintiff was 15 years of age at the time of his injury. He brings this action in his own name after reaching the age of majority. Defendants demurred to plaintiff's complaint. The demurrer was sustained and plaintiff, declining to plead further, appealed.

Plaintiff's injury occurred when he was tackled by two members of the Vale team. Among other injuries, he suffered a broken neck which resulted in paraplegia.

The complaint, after alleging that the defendants were negligent in certain particulars, recited that the defendant school district had in force a policy of liability insurance covering defendants' liability for the injury to plaintiff. The policy referred to was purchased pursuant to the authority granted in ORS 332.180, which reads as follows:

"*332.180 Liability insurance; medical and hospital benefits insurance.* Any district school board may enter into contracts of insurance for liability covering all activities engaged in by the district, for medical and hospital benefits for students engaging in athletic contests and for public liability and property damage covering motor vehicles operated by the district, and may pay the necessary premiums thereon. Failure to procure such insurance shall in no case be construed as negligence or lack of diligence on the part of the district school board or the members thereof."

The only issue argued below and presented in the briefs and argument on appeal is whether ORS 332.180 is to be interpreted as impliedly providing for the waiver of the sovereign immunity of a school district to the extent of the coverage of the insurance policy purchased by the district. However, the resolution of the question of the corporate school district's immunity does not dispose of the question of the liability of the individual members of the school board, the superintendent and the principal, all of whom are named as defendants. We must, therefore, examine the complaint to determine whether it states a cause of action against any or all of these other defendants as well as against the defendant district.

■ The general demurrer tests the complaint as to whether it states facts sufficient to describe a duty on the part of these individual defendants. The pertinent

parts of the complaint purporting to state the facts upon which the duties of these defendants are predicated read as follows:

### "VII.

"That * * * Plaintiff was 15 years of age and was attending the aforementioned school as a Freshman * * *.

### "VIII.

"That * * * Plaintiff was sent by the Defendants to play in a football game where the team of the above named Defendant school was playing the football team of the Vale High School at Vale, Malheur County, Oregon and that at said time and place, the Plaintiff was an inexperienced football player and weighed approximately 140 pounds and he was not physically coordinated and that the football team of the Vale High School consisted of very large boys and a highly experienced and rough team, all of which the Defendants, and each of them, well knew, or should have known.

### "IX.

"That when the Plaintiff had played a very short time in said game, he was tackled hard by two Vale boys and suffered grievous and serious injuries which are in part as follows: [reciting the injuries] * * *.

### "X.

"That the injuries heretofore mentioned which were received by the plaintiff were directly and proximately caused by the negligence of the Defendants, and each of them, and that the Defendants, and each of them. were negligent in that they caused an inexperienced football team, namely the football team of the Defendant School District to play a team far superior; they allowed the Plaintiff, who was an inexperienced Freshman to par-

ticipate in said game, that they allowed the Plaintiff to participate in a varsity football game without proper or sufficient instruction; that they did so without the consent or knowledge of the Plaintiff's parents."

Although, strictly speaking, paragraph VIII of the complaint does not allege that the defendants were negligent in the particulars recited therein, we shall regard it, together with the allegations in paragraph X, as an attempt to describe the defendants' duties to the plaintiff. We shall first consider the sufficiency of the complaint to state a cause of action against the individual defendants, i.e., the chairman and members of the board, the superintendent of the district, and the principal of the district. Since the coach is not a party we are not presented with the question of his liability. However, we shall later consider alleged omissions on the part of the coach in dealing with the question of the district's possible vicarious liability.

■ First it may be noted that the individual members of the district school board, the district superintendent, and the district principal do not stand in the relation of master and servant with persons subordinate to themselves; consequently the doctrine of *respondeat superior* cannot operate to impose vicarious liability upon these persons for the negligence of their subordinates. The principle is clearly stated as follows in *Antin v. Union High School Dist. No. 2,* 130 Or 461, 472, 280 P 664, 66 ALR 1271 (1929):

"* * * The relation of master and servant, or of principal and agent, does not exist in such cases, and hence the doctrine of *respondeat superior* does not apply between the directors and such persons.

"In *Colby v. City of Portland,* 85 Or. 359 (166

Pac. 537), this court, speaking through Mr. Chief Justice McBRIDE, said:

> " 'It is the universal rule that a public officer is not personally liable for the negligence of an inferior officer unless he, having the power of selection, has failed to use ordinary care in the selection.'
>
> "School directors are entitled to all of the immunities of public agents who are charged with a duty which, from its nature, cannot be exercised without availing themselves of the services of others, and the doctrine of *respondeat superior* does not apply in such cases [citing cases]."

The court further elucidates the principle by quoting from *Robertson v. Sichel,* 127 US 507, 8 S Ct 1286, 1290, 32 L Ed 203 (1888) as follows:

> " 'A public officer or agent is not responsible for the misfeasances or positive wrongs, or for the non-feasances or negligences, or omissions of duty, of the subagents, or servants or other persons properly employed by or under him, in the discharge of his official duties.' " 130 Or at 473.

■ The *direct,* as distinguished from the *vicarious,* liability of these individual defendants rests upon other considerations. A public officer may be held personally liable for certain acts performed in his official capacity. However, because of his status as a public officer he is, under certain circumstances, absolved from liability for acts performed by him in carrying out his official duties. Jennings, Tort Liability of Administrative Officers, 21 Minn L Rev 263 (1937).

The line between liability and immunity in the case of public officers has been drawn upon the basis of distinctions which are not entirely satisfactory. *Ham v. County of Los Angeles,* 46 Cal App 148, 162, 189 P 462 (1920); 3 Davis, Administrative Law (1958)

§§ 26.01-26.07; 2 Harper & James, Torts (1956) § 29.10; Prosser, Torts (2nd Ed 1955) 780-784; Jennings, op. cit. supra, pp. 297-301. However, it is not necessary in the present case to concern ourselves with the validity of these distinctions or the various circumstances under which a public officer should be liable for his negligent conduct.

In the case at bar the complaint does not describe any duty of the members of the school district board, or of the district superintendent, or of the district principal. Considering first the duty of the members (including the chairman) of the board, we can say as a matter of law that they are not charged with the responsibility of supervising the detailed activities involved in the conduct of the athletic program at Nyssa high school.

A similar question of liability was presented in *Luce v. Board of Education of Village of Johnson City*, 2 App Div2d 502, 157 NYS2d 123 (1956). There an action was brought against the school board, the principal and the teacher to recover damages for an injury to a pupil sustained while participating in a physical education class. The court said:

"* * * It is urged that the Board is liable for its own negligence in failing to adopt necessary rules for the governing of its gymnasium classes, its principals and teachers, and rules relating to the limitation of activity by children with physical defects. Section 1709, subdivision 2, of the Education Law gives the Board the power and imposes the duty, 'To establish such rules and regulations concerning the order and discipline of the schools, in the several departments thereof, as they may deem necessary to secure the best educational results.' Our attention is also called to the following provision in subdivision 13 of the same section:

'To have in all respects the superintendence, management and control of said union free schools, * * *.' We do not think that by this language the Legislature intended to impose upon the Board of Education a duty to make and assume the direct responsibility of enforcing rules which reach down into each of the numerous class rooms and classes of a complex school system and to provide in detail the type of activities and the qualification of individuals for participation therein. In a modern school system composed of several schools, each with many and varied classes, supervised in general by a superintendent and immediately supervised by many trained and competent teachers, such a requirement would be impractical and unrealistic. It would be entirely impossible for a board of education to adopt and enforce rules which would cover every detail of activity and every individual situation which might arise. When read in context, and particularly when read in the light of all of the provisions of Section 1709, it seems clear that the Legislature, by the quoted language, intended to impose only general duties upon the board relating to the properties, policies, general courses of study, the employment of qualified and competent persons, and generally setting up and maintaining an education system. * * * The judgment against the Board of Education should be reversed and the complaint dismissed as to it." 157 NYS2d at 126-127.

The powers and duties of the board members as delimited by the quoted New York statute are essentially the same as those conferred and imposed upon members of school boards in Oregon. The defendant principal's liability is governed by a similar principle. Again we quote from the Luce case:

"The defendant Leola Holcomb was the supervising principal of the elementary school where the accident happened. Her duties, too, were adminis-

trative, supervisory, and general in nature. She was responsible for the assignment of class rooms, for discipline in the school, and administrative supervision over the teachers in the school. It does not appear that she had any authority, let alone duty, to personally supervise or to direct the nature of activities or limit the participation of any pupil in a physical education class. The physical education department was a separate arm of the Board of Education, operating in all of the schools. Mrs. Denton, the physical education teacher in immediate charge here, was an agent of the physical education department. It is a matter of common knowledge that in modern times the educational and competency requirements of such a teacher are high. Of necessity the detailed activities of each class and of each student therein must be left to such supervising teacher. As observed in Thompson v. Board of Education, 280 N.Y. 92, 96, 19 N.E.2d 796, 797: 'Appellant [a principal] could not personally attend to each class at the same time, nor was any such duty imposed upon him' * * * It does not appear that the principal had the power or authority to direct the detailed conduct of a physical education class, or to substitute her judgment for that of Mrs. Denton as to the risks of a particular game to a particular pupil * * *. The evidence does not sustain a finding of negligence on the part of the defendant principal, and the judgment against her should be reversed and the complaint dismissed." 157 NYS2d at 127-128.

Possibly the principal's supervisory authority in the Luce case was more limited than the authority of the defendant principal in the case at bar; but the court's statement of the principal's duty with respect to supervising and directing the participation of pupils in physical education activities is equally applicable to the present case.

■ These defendants, i.e., the members of the school

board, the superintendent and the principal, did not have the duty to ascertain whether each player on the Nyssa team had received adequate coaching or instructions relating to his manner of play. They had, at most, a duty of general supervision of the athletic program, not the duty of supervising specific sports activities. Giving the complaint the most generous treatment, it does not recite facts sufficient to state a breach of duty on the part of these defendants in failing to exercise supervision in connection with the game in question. We hold that plaintiff's complaint fails to state a cause of action against the members of the school board, the superintendent and the principal. Therefore, the trial court was correct in sustaining the demurrer with respect to these defendants. The judgment insofar as it relates to them is affirmed.

■ We shall now consider the question of whether the complaint states a cause of action against the corporate defendant, i.e., the School District. For the purpose of our immediate inquiry we shall assume that the district is not absolved from liability by reason of sovereign immunity. We reserve that question for consideration in a later part of the opinion. We note here that the corporate district *does* stand in the relationship of master-servant with the employees of the district. Thus, if the allegations of the complaint are sufficient to state a cause of action for negligence on the part of any of the agents or servants of the district who were responsible for the athletic program, the defendant district would be accountable under the doctrine of *respondeat superior*. Accordingly, we shall examine the complaint to determine whether it charges any of the district's agents or servants, including the members of the board, the district superintendent, the principal and the coach with negligent conduct.

In testing the sufficiency of the complaint we shall assume, as the demurrer requires us to do, that each of the above named agents or servants knew that plaintiff was an inexperienced football player and that the Nyssa team as a whole was inexperienced. Ordinarily, high school freshmen who go out for football are inexperienced in the sense that they have considerable to learn about the intricacies of team play and not a little to learn about protecting themselves from injury to the extent that such is possible in playing the game. The term "inexperienced" as applied to any individual player or to a team as a whole is relative. It is alleged, and must be taken as true, that the Vale team was "a highly experienced" team and "far superior" to the Nyssa team. What differences do these terms express as they relate to defendant's duty? It is common knowledge that the ability of high school teams varies considerably throughout the state, even where the schools are in the same athletic classification. These teams play each other and it is expected that ordinarily one team will demonstrate its superiority over the other, and commonly the difference in performance can be attributed to the lack of experience of one or more of the players on the losing team.

Most boys who play high school football begin as plaintiff did, i.e., by going out for the team as a freshman. Most of them are "uncoordinated" as plaintiff was alleged to have been at the time he played. To say that it is improper for the officials of the school to permit such "inexperienced" and "uncoordinated" boys to play would be the equivalent of saying that football could not properly be a part of the athletic program of any high school in the state because the program could never lawfully be started.

The case of *Underhill v. Alameda Elementary School District,* 133 Cal App 733, 24 P2d 849 (1933) is in point. There an action was brought against the school district to recover for personal injuries suffered by a pupil while playing baseball in the defendant district's school yard. The plaintiff's complaint contained an allegation "that the district negligently sponsored the playing of baseball in said yard and negligently supervised the playing of such baseball game * * * [and] that plaintiff and other children of tender and delicate years were taking part in such game, and that 'larger pupils' were participating in the game." 24 P2d at 851. The court said, "[w]e believe these allegations are wholly insufficient." The court further stated:

> "* * * Plaintiff also stresses the fact that 'larger' pupils were playing in the game, but the word 'larger' is but of little significance when it does not appear how much larger or older than plaintiff these pupils were. Few games are ever played where all the participants are of absolutely uniform size and age, and an allegation that certain participants were 'larger' pupils can have no tendency to show negligence on the part of those sponsoring the game." 24 P2d at 851.

■ It is possible that two football teams may be so disparate in size and ability that those responsible for supervising the athletic program would violate their duty in permitting the teams to play. This, if properly alleged, would be a question of fact to be established by the evidence. But the complaint in the case at bar does not contain sufficient allegations to state a breach of duty in this regard. As we have already pointed out, the allegation that plaintiff was uncoordinated and an inexperienced player weighing 140

pounds simply describes the average freshman boy who goes out for football. The additional allegation that the opposing team was of superior experience again states a normal condition under which teams engage in competition. Although the complaint alleges that the Vale team contained "large" and "rough" boys, there is nothing to negative the idea that the Nyssa team also contained large and rough boys, albeit inexperienced. It is our opinion that the allegations do not describe a breach of duty on the part of the school district or of its agents or servants.

 The complaint further alleges that the defendants were negligent in that "they allowed the Plaintiff to participate in a varsity football game without proper or sufficient instruction." Granting this complaint every reasonable intendment in favor of its sufficiency to state a cause of action, we shall treat this as an allegation that the coach whose duty it was to properly instruct the plaintiff, failed to exercise reasonable care for the protection of his players. Considered in this posture, we are of the opinion that this specification constitutes a sufficient allegation of negligence. It is not alleged that the district was negligent in hiring or in supervising the coach and, therefore, there is no allegation that the district is *directly* liable. However, as we have indicated, the district may be *vicariously* liable for the negligence of its servants. And a coach or physical education instructor is required to exercise reasonable care for the protection of the students under his supervision. *Bellman v. San Francisco H. S. Dist.,* 11 Cal2d 576, 81 P2d 894 (1938); *La Valley v. Stanford,* 272 App Div 183, 70 NYS2d 460 (1947). Also, it is not necessary that the agent or servant who is the alleged tort-feasor be joined in a suit against the principal or master based upon *respondeat su-*

*perior. Wiebe v. Seely, Administrator,* 215 Or 331, 354, 355 P2d 379 (1959); Annotation: 135 ALR 271 (1941). We hold that the allegation that plaintiff was allowed to participate in a varsity football game without proper or sufficient instruction is sufficient to state a cause of action against the district. In the absence of the defense of sovereign immunity, this would require that the demurrer be overruled with respect to the defendant school district.

Having concluded that the complaint can be construed to state a cause of action upon the basis of vicarious liability if the defendant school district is not immune from suit, we must now determine the extent to which, if at all, such immunity exists.

Plaintiff calls upon us to follow the example of *Molitor v. Kaneland Com. Unit Dist.,* 18 Ill2d 11, 25, 163 NE2d 89 (1959) and to completely eliminate the doctrine of sovereign immunity as applied to school districts. In that case the Supreme Court of Illinois, in a very able opinion by Mr. Justice Klingbiel, reviewed and appraised the various theories of sovereign immunity and concluded that "the rule of school district tort immunity is unjust, unsupported by any valid reason, and has no rightful place in modern day society." The case is commented on in 37 Chi-Kent L Rev 44 (1960); 48 Georgetown L J 781 (1960); 48 Ill B J 549 (1960); 46 Iowa L Rev 196 (1960); 31 Miss L J 313 (1960); 54 Northwestern U L Rev 588 (1959); 38 Tex L Rev 649 (1960); 5 Villanova L Rev 588 (1960); 12 Western Reserve L Rev 126 (1960).

Other courts have broken away from the rule of governmental immunity. *Muskopf v. Corning Hospital District,* 359 P2d 457 (January 27, 1961), 29 Law Week 2366-2367 (February 14, 1961); *Hargrove v. Town of Cocoa Beach,* 96 So2d 130 (Fla), 60 ALR2d 1193

(1957). And see dissenting opinion of Mr. Justice Frantz in *Liber v. Flor,* 353 P2d 590, 602-605 (1960). The rule is almost universally criticized. See the references to legal periodicals in *Molitor v. Kaneland Com. Unit Dist.,* supra.

We believe that the criticism is, for the most part, justified and were we free to adopt the course taken by the court in the Molitor case we would not hesitate to do so. But our power to choose the policy of this state with reference to the right of persons to recover for torts committed by agencies of the state has been limited both by constitution and statute.

■ Our Constitution is framed on the premise that the state is immune from suit and that if immunity is lifted it shall be done so by the action of the legislature. Article IV, § 24 provides as follows:

> "Provision may be made by general law, for bringing suit against the State, as to all liabilities originating after, or existing at the time of the adoption of this Constitution; but no special act authorizeing (sic) such suit to be brought, or making compensation to any person claiming damages against the State, shall ever be passed."

Since a school district is a political subdivision of the state, *Lovell v. School Dist. No. 13,* 172 Or 500, 507, 143 P2d 236 (1943); *Jacobberger v. School District No. 1,* 122 Or 124, 129, 256 P 652 (1927); *Spencer v. School District No. 1,* 121 Or 511, 518, 254 P 357 (1927), the principle of immunity pronounced in the Constitution applies to it. See, *James & Yost v. Board of Higher Edu.,* 216 Or 598, 601, 340 P2d 577 (1959).

■ Thus it is apparent that the doctrine of sovereign immunity exists in this state, not as the creation of the courts, but as a constitutional principle chosen

by the people and which is subject to change only by general law. Therefore, we are not at liberty to say, as did the court in *Pierce v. Yakima Valley Etc. Ass'n.*, 43 Wash2d 162, 260 P2d 765, 774 (1953) in speaking of its right to abolish the rule of charitable immunity, that "We closed our courtroom doors without legislative help, and we can likewise open them."

To determine, then, that a school district in this state may incur tort liability we must find that a provision waiving sovereign immunity has been "made by general law." The language of ORS 30.320① is broad enough to warrant an interpretation that the immunity of school districts has been waived, the statute, together with ORS 30.310, providing that an action may be maintained against a school district and other governmental units "for an injury to the rights of the plaintiff arising from some act or omission." However, our cases have interpreted the statute to permit recovery only when the governmental unit is acting in its proprietary as distinguished from its governmental capacity. *Antin v. Union High School Dist. No. 2*, 130 Or 461, 465-466, 280 P 664, 66 ALR 1271 (1929) and cases there cited. Since it is now established by *Lovell v. School Dist. No. 13*, 172 Or 500, 507-508, 143 P2d 236 (1943) that a school district, when performing the duties imposed upon it by statute, always acts in a governmental capacity, ORS 30.320 does not operate to lift the school district's immunity from tort liability.

We would, of course, be free to re-examine ORS 30.320 and reject the restricted interpretation given

---

① 30.320 Actions and suits against governmental units. * * * An action or suit may be maintained against any other public corporation mentioned in ORS 30.310 in its corporate character, and within the scope of its authority, or for an injury to the rights of the plaintiff arising from some act or omission of such other public corporation.

to it in the *Antin v. Union High School Dist. No. 2,* supra, line of cases, but this would entail not only the overruling of many cases, some of which are of recent date, *Bacon v. Harris,* 221 Or 553, 352 P2d 472 (1960); *Hillman v. North. Wasco Co. PUD,* 213 Or 264, 304, 323 P2d 664 (1958), but also the more serious difficulty of reconciling such an interpretation with the legislative action in enacting ORS 332.180, which is set forth early in this opinion.

The enactment of ORS 332.180 indicates to us that the legislature considered the question of the school district's immunity and elected to retain it except to the extent that it was modified by ORS 332.180. If the legislature had intended that the school district's immunity from tort liability was to be abrogated, it would seem that the statute would have been drafted to expressly so provide. We recognize that a different interpretation is possible. Thus in *Molitor v. Kaneland Com. Unit Dist.,* 18 Ill2d 11, 163 NE2d 89 (1959), where the court likewise had before it a statute authorizing the school district to purchase insurance, the statute was interpreted "as expressing [the legislature's] dissatisfaction with the court created doctrine of governmental immunity and an attempt to cut down that immunity where insurance is involved." We look at the matter differently. The legislature has undertaken to deal with the question of the school district's immunity; and we think that it is reasonable to assume that it considered the doctrine of immunity as a whole, at least as it related to school districts, and elected to lift immunity only to the extent of the insurance actually purchased.

Further evidence that the legislature did not intend to abondon the doctrine of sovereign immunity in enacting ORS 332.180 is found in a related statute,

ORS 243.110, which authorizes the purchase of insurance for the protection of state officers and employees against claims made against them. In the latter section it is expressly provided that "nothing in this section shall be construed as a waiver by the State of Oregon of any immunity against suit."

Our statute simply authorizes the district to purchase liability insurance. The statute also makes it clear that the district will not be regarded as being at fault for failing to purchase such insurance. We think that the legislature intended to provide that the district's immunity would be lifted to the extent, and only to the extent that its activities were in fact covered by insurance as authorized by the statute. It will be noted that the statute in effect provides that not only the members of the school district board but the district itself, as a corporate entity, is not to be deemed at fault in failing to procure insurance.

Is it fair to infer that although the district is not to be regarded as being at fault in failing to procure insurance that it will nevertheless be liable for an injury which could have been but was not covered by insurance? We think not. In summary, then, we hold that a school district which does not purchase liability insurance is immune from liability; and that its immunity is lifted only to the extent that it is authorized to purchase and in fact has obtained insurance covering the activity or activities in question.

Defendant argues that ORS 332.180 should be construed simply as authorizing school districts to purchase certain insurance and that no implication of immunity should be drawn from that statutory authorization. To this end it is argued that a school district might wish to purchase insurance for reasons which

would be consistent with its claim of immunity. Thus it is pointed out that the policy requires the insurer to defend the district in any litigation; that the district is provided with fast and efficient claim investigation service; that the insurer is required to pay all attorney's fees, court costs and other expenses of investigating and defending claims; that reimbursement for emergency medical care furnished by the district is covered and that the district is protected in case the doctrine of immunity is abrogated during the life of the policy. Although governmental bodies apparently do sometimes purchase insurance with such limited coverage (see, Note 33 Minn L Rev 634, 642 (1949)), we do not think that ORS 332.180 contemplated authorizing the purchase of insurance only to provide for these benefits. Gibbons, Liability Insurance and the Tort Immunity of State and Local Government, 7 Duke L J 588, 592 (1959). Indeed, no statute would have been necessary to so authorize the district because it would have had the authority to make such a purchase under the general powers granted to it by the legislature.

We believe that it is reasonable to assume that the legislature intended ORS 332.180 to authorize the purchase of liability insurance with the coverage ordinarily included in standard liability insurance policies. We also think that it is reasonable to regard the statute as a legislative declaration of a policy to lift the school district's immunity to the extent that insurance is actually provided.

Defendant further argues that the legislative intent to fully retain the doctrine of sovereign immunity as applied to school districts in enacting ORS 332.180 becomes evident when that section is contrasted with ORS 243.110. In the latter section, after providing

that state agencies are authorized to purchase insurance to protect their officers and employees from claims against them, it is further provided as follows:

"(2) No state agency shall purchase or renew liability insurance under this section unless the policy or contract of insurance provides that the insurer will not, in any proceeding brought on the policy or contract, assert as a defense the immunity of this state against suit.

"(3) Nothing in this section shall be construed as a waiver by the State of Oregon of any immunity against suit."

It is contended that since the legislature specifically dealt with the problem of sovereign immunity in ORS 243.110 in relation to insurance, the failure to mention the doctrine of immunity in ORS 332.180 is evidence that the legislature intended to leave the doctrine unmodified where the latter section is applicable. We find this unconvincing. It would be equally as plausible to draw the inference that since the legislature expressly provided in ORS 243.110 that immunity is not waived, the absence of such a provision in ORS 332.180 indicates an intent to waive immunity in the circumstances covered by the latter section.

Our interpretation follows the pattern adopted by other courts in construing similar statutes. *Taylor v. Knox Co. Board of Education,* 292 Ky 767, 167 SW2d 700, 145 ALR 1333 (1942) is illustrative. In that case the defendant board of education purchased liability insurance authorized by statute. The court said:

"* * * The Legislature may make school boards liable for their torts or the torts of their agents and employees, and we know of no reason why it may not take a middle course and empower them to protect by liability insurance persons injured by the negligence of their bus drivers and to provide that the liability of the insurer shall be

determined by the final judgment obtained by the injured person." 292 Ky at 770.

The court further explained that:

"The act does not make the board liable for the torts of its agents and employees, but it does permit the board to be sued and a judgment to be obtained which, when final, shall measure the liability of the insurance carrier to the injured party for whose benefit the insurance policy was issued. In no event, of course, can the judgment be collected out of school funds." 292 Ky at 771-772.

Other cases are to the same effect. *City of Knoxville, Tenn. v. Bailey,* 222 F2d 520 (6th Cir 1955); *Tracy v. Davis,* 123 F Supp 160 (D.C. E.D. Ill 1954); *Thomas v. Broadlands Comm. Consol. Sch. Dist. 201,* 348 Ill App 567, 109 NE2d 636 (1952); *Rogers v. Butler,* 170 Tenn 125, 92 SW2d 414 (1936). See Gibbons, Liability Insurance and The Tort Immunity of State and Local Government, 7 Duke L J 588, 600-604 (1959).

The extent to which the school district is authorized under ORS 332.180 to contract for insurance covering accidents arising out of students' participation in athletic contests is not entirely clear. It will be noted that by ORS 332.180 the district is authorized to enter into contracts for insurance "for liability covering *all* activities engaged in by the district" (emphasis added). The statute further authorizes the district to purchase insurance "for medical and hospital benefits for students engaging in athletic contests." We construe the latter provision to authorize the purchase of insurance providing limited coverage for student injuries irrespective of the fault of the district or its agents. The authorization to purchase liability insurance covering injuries arising out of the fault of the district or its agents is found in the clause first

referred to above. In the case before us the action is based upon the alleged fault of the defendant school district and, therefore, the limit of its liability is to be measured by the coverage of the liability insurance policy it has purchased.

Since plaintiff's recovery cannot exceed the amount of liability insurance covering the defendant school district, the jury must be instructed that the verdict cannot exceed the amount which the court finds is the limit of the policy. It would not be proper to disclose to the jury that the school district is covered by insurance. As we have already indicated, plaintiff's complaint recited that the defendant school district had in force a policy of insurance covering its liability for injury to plaintiff. Unless the existence or extent of the insurance coverage is put in issue the fact that there is such coverage should not be disclosed to the jury. In the event that the pleadings are submitted to the jury, those portions of the pleadings making reference to insurance must be excised.

■ We wish to make it clear that under our construction of the statute the school district and not the insurer is the proper defendant.

The judgment of the lower court is affirmed as to the chairman and members of the district school board, and the superintendent and principal of the district. With respect to the corporate school district, the judgment of the lower court is reversed and the cause is remanded with directions to overrule the demurrer and to take such action as is consistent with this opinion.

ROSSMAN, PERRY and KING, JJ., dissent.