Argued October 17; affirmed December 5; rehearing denied
December 29, 1944

# GREGORY v. SALEM GENERAL HOSPITAL

(153 P. (2d) 837)

Before Bailey, Chief Justice, and Rossman, Lusk,
Brand and Hay, Associate Justices.

*H. G. Hoy*, of Portland (Hoy & Prag, of Portland, on the brief), for appellant.

*F. S. Senn*, of Portland, and *Custer Ross*, of Salem (Senn & Recken, of Portland, on the brief), for respondent.

ROSSMAN, J.

This is an appeal by the plaintiff from a judgment of the circuit court based upon a directed verdict. The action out of which the challenged judgment arose was predicated upon averments that the plaintiff, while a paying patient in the defendant's hospital, was injured through the negligence of a nurse in the defendant's employ who, the plaintiff alleges, the defendant knew was incompetent. The complaint charges (1) that the nurse just mentioned placed a hot water bottle in the bed occupied by the plaintiff after arranging the bed covers in such a way that the plaintiff could neither eject the bottle nor avoid contact with it; and (2) that the defendant failed to provide for him a call signal whereby he could summon aid.

All the averments just mentioned are denied by the defendant. The defendant (respondent) admits, however, that the plaintiff was a patient in the defendant's hospital. The answer alleges:

"The defendant is a charitable, eleemosynary institution and is operated as a non-profit corpora-

tion; that this defendant has no stockholders, pays no dividends and all of its assets are devoted to charitable purposes such as care for the sick and injured; that the defendant operates a hospital in Salem, Oregon, and that said hospital admits patients regardless of race, color or creed; that it administers to the poor as well as to the rich and that when patients are unable to pay this defendant renders treatment without charge; that the defendant receives donations as a charitable institution and is a non-profit institution."

The facts just quoted are denied in the reply.

At the trial, through stipulation, the issue as to the charitable character of the defendant was first tried. Only the defendant presented evidence upon that issue. Its articles of incorporation state:

"Article II. The enterprise, business, pursuit and occupation, in which this corporation proposes to engage is the care of the sick, the relief of the needy and suffering, and particularly to establish, and maintain, a public and private hospital, to be conducted independent of sectarianism, and to be open to persons of whatever sect, or creed, and also for the purpose of benevolence and charity.

"Article III. The estimated value of property, and money, possessed by this corporation, at the time of signing these articles, is about one thousand dollars; and its sources of revenue, or income, are from gifts, bequests, contributions, donations, endowments, and receipts for services rendered.

"Article IV. The title of the officers making those articles of incorporation shall be 'The Board of Control of the Salem Hospital.' "

The articles just mentioned were filed July 7, 1896. November 20, 1917, the defendant filed supplementary articles of incorporation which, in addition to expanding the membership of its board into fifteen directors,

provided that "no practicing physician shall be eligible to membership on the Board of Directors." The supplementary articles delineated the manner in which the fifteen directors should be chosen; for instance: "Seven members shall be named by a committee consisting of the Mayor of the City of Salem, the County Judge of Marion County, Oregon, and the President of the Commercial Club of Salem, * * * ."

According to the evidence, there was no hospital in Oregon south of Portland in 1896 and a need for one existed. After the articles of incorporation were filed, friends of the proposed hospital solicited funds for its construction. Persons of all classes and vocations contributed. In 1899 the defendant received gratuitously from the Oregon Childrens Aid Society a deed to a parcel of real property upon which the hospital now stands. The deed contained a condition requiring the defendant always to maintain in the hospital a children's ward "under the care of a faithful and competent nurse both day and night" and to permit the Aid Society to send to the ward any indigent child for free care and treatment, provided that not more than three thus selected should be in the hospital at one time. It further provided that the Aid Society should always be represented on the defendant's board of control. The evidence indicates that the defendant has complied with the conditions of the deed.

The defendant's hospital contains seventy-eight beds and meets the standards of the American College of Surgeons. It has their approval.

According to the evidence, none of the members of the defendant's board nor any of its officers re-

ceive remuneration for their services. The defendant has a business manager and a superintendent. The latter supervises the care of the patients and the nurses who work in the hospital. Both the business manager and the superintendent receive salaries, but they are modest in amount. All sums received by the defendant, whether from patients or from charity, are employed to discharge the expenses incurred in the maintenance of the hospital, the purchase of equipment and the care of patients who cannot pay. Through a bequest the hospital has an endowment of $1,500.

The evidence indicates that the defendant's charges are lower than those of any other standardized hospital in the Northwest. Its hospital admits all who come for treatment, regardless of race, creed, color or inability to pay. All patients receive similar treatment and no discrimination is exercised on account of any of the circumstances just mentioned.

When a patient seeks admission to the defendant's hospital he is accepted without any inquiry being made as to his ability to pay for the services which he will receive. Upon his reception as a patient a work sheet is prepared for him upon which entries will be made covering his case. Among other information that is entered upon the sheet are the charges for services rendered to him. If the defendant's business manager believes that the patient ought not to be expected to pay for the services rendered, the word "charity" is written upon the sheet. In that event, no statement of account is rendered to the patient, but the entries of charges are continued so that the defendant may know at the end of the year the total of the charity it

administered. In the following years the defendant administered the following charity:

| 1936 | $ 4,839.14 |
|------|-----------|
| 1937 | 4,479.97 |
| 1938 | 4,564.13 |
| 1939 | 6,684.54 |
| 1940 | 6,881.49 |
| 1941 | 7,168.68 |
| 1942 | 5,614.60 |

Those totals are for charity only and include nothing for unpaid bills, bad credit, and so forth.

According to a summary prepared by the defendant's business manager of the entries in its account books, the defendant has received, since August 7, 1899, a total of $209,526.45 through the medium of gifts. In order to illustrate the nature of these gifts, we selected at random the following from the summary:

"Committee for entertainment — Pres. Theodore Roosevelt 7/8/1902. Donated balance of its fund for childs wheel chair ............................................. $ 12.45

\*   \*   \*

"Mrs. G. C. Bellinger, 6/19/22, Sale of hospital bricks for new building ......... 161.61

\*   \*   \*

"Loretta Ford, July 17, 1935, Surgery sterilizer ..................................................... 500.00

\*   \*   \*

"Ladies Auxiliary, 7/6/38, Sewing machine ..................................................... 190.00"

■ The foregoing evidence is wholly uncontradicted. It is true that charity is not administered in the defendant's hospital with a free hand; but charity does

not lose its character as such when it becomes sagacious. We believe that the evidence brings the defendant within the definition of a charitable institution as that term is defined in *Benton County v. Allen*, 170 Or. 481, 133 P. (2d) 991, and in *Hamilton v. Corvallis Hospital Association*, 146 Or. 168, 30 P. (2d) 9.

The trial judge directed a verdict for the defendant pursuant to a belief that under the decisions of this court a charitable institution is not liable for an injury negligently inflicted by one of its employees. The crucial issue submitted by this appeal is whether or not a charitable institution is liable for its negligence. The plaintiff approaches that issue from three angles: His first assignment of error contends that the circuit court erred when it received in evidence the copy aforementioned of the defendant's articles of incorporation. The second states that the circuit court erred when it failed to sustain the plaintiff's demurrer to the new matter (previously quoted) in the defendant's answer and when it received evidence in support of those averments. The third urges that error was committed when the circuit court sustained the defendant's motion for a directed verdict.

We think that all three of those assignments of error can be conveniently considered together. Although the plaintiff does not expressly so state, nevertheless, he seems to concede that this court is committed to the rule that charitable institutions are exempt from liability for torts arising out of negligence. The plaintiff, however, urges us (1) to reconsider the rule just mentioned; (2) to hold that non-profit corporations which were not organized pursuant to §§ 77-410 to 77-419, O. C. L. A., are liable for their negligent acts; and (3) to restrict the broad sweep of the rule of non-

liability so that charitable corporations will be liable for the negligence of a servant in whose selection due care was not exercised.

We shall now consider the merits of those contentions:

Sections 77-401 to 77-409, O. C. L. A., had their origin in Laws of 1864, Deady's Code, page 633. Sections 77-410 to 77-419 had their inception with Laws of 1872, page 135. Section 1 of the act just mentioned said:

"Incorporations may be formed for acquiring, holding and disposing of church property; for the benefit of religion; for works of charity, and for public worship, in the manner hereinafter provided in this Act."

The title of the act follows:

"An Act to provide for the formation of Ecclesiastical Corporations for the holding of Church property; for the benefit of religion; for works of charity, and for public worship."

Section 2 of the act, which states the manner in which such corporations may be formed, says:

"One or more of the principal officers, trustees or clergy of any church, who shall have been duly chosen, elected, or appointed, in accordance with the usages and regulations of such church, and authorized to act for the church, and in whom shall be vested, at the time, the legal title of the church property, may make and subscribe written articles of incorporation in duplicate, * * * ."

Section 3 says:

"The articles of incorporation shall specify:
1st. The name * * * .
2d. The object of said corporation.
3d. The estimated value of church property

and money at the time of making articles of incorporation.

4th. The title of the person or persons making such articles, * * * ."

Section 4 of the act says:

"Upon the making and filing for record articles of incorporation * * * ; Provided, however, That no part of the resources of said corporation shall ever be used for any other than the object herein named; * * * ."

■ The plaintiff greatly stresses the importance of the proviso just quoted. Those words are absent from Laws of 1864, Deady's Code, page 633, and, based upon their absence from that act, the plaintiff contends that only corporations formed under the Act of 1872 enjoy immunity from liability for negligence. We think it is evident that Laws of 1872, page 135, is applicable only to the formation of ecclesiastical corporations. The defendant is not a corporate body of that kind.

As we have seen from the language above quoted, Laws of 1864, Deady's Code, page 633, authorized the incorporation of religious, benevolent, literary and charitable corporations. The defendant, as we have already indicated, is a charitable institution. It, clearly, is not an ecclesiastical corporation. Hence, it was formed pursuant to the Laws of 1864 and not under the Act of 1872. As we have indicated, the 1864 law contained no provision stating that "no part of the resources of said corporation shall ever be used for any other than the object herein named."

■ The words of § 77-414 (Laws of 1872, page 136, § 4) upon which the plaintiff depends, were not, in our belief, intended to grant an ecclesiastical corporation

immunity from tort liability, but to restrict it to the field of religion, charity and public worship; in other words, to prevent it from engaging in business. Exemption from tort liability, we think, is not dependent upon the presence of words of the above kind in a statute under which the corporation was formed, but the fact that it was engaged in works of charity, benevolence, religion or education.

Four of our previous decisions indicate that religious, charitable, benevolent and educational institutions are exempt from liability for injuries inflicted through their negligence. The first of these is *Hill v. Tualatin Academy*, 61 Or. 190, 121 P. 909. In that decision this court spoke for the first time upon the issue as to the liability or exemption from liability of a non-profit corporation for its negligence. A janitor in the employ of the defendant set some gopher guns upon its campus for the purpose of ridding it of gophers. The plaintiff's mother brought him, a four-year-old child, to the campus where his eyes fell upon the guns. He suffered an injury when he touched one of them. Since the plaintiff was only four years old, it could not be said of him that upon entering the defendant's grounds he waived liability for its torts. Again, since he was not a student in the defendant's school or a recipient in any other way of its beneficence, it could not be held that he was one of those for whose benefit the trust fund had been gathered together. In the decision of this court the defendant's negligence was taken for granted. The defendant was created by a special act of the legislature which contained the following provision:

"The capital stock of said institution shall never exceed five hundred thousand dollars, nor the in-

come or proceeds of the same be appropriated to any other use than for the benefit of said institution as contemplated by this act.''

The first authortiy upon the issue as to the defendent's liability which the decision mentioned was *Feoffees of Heriot's Hospital v. Ross,* 12 Cl and F. 507. Concerning that case, the decisoin of this court said:

"The cause finally reached the House of Lords, where it was determined that, if the charity trustees were guilty of a breach of trust the person injured by such violation of duty had no right to be indemnified by damages out of the trust fund.'' ·

Shortly the decision said:

"Corporations organized solely for educational purposes to which all their revenues must be applied are charitable institutions, and, as such, are not liable for the negligent acts of their servants, notwithstanding tuition fees are received for technical knowledge imparted to their students. * * * By reason of the *quasi* public service performed by a college in the dissemination of universal knowledge, whereby the happiness and welfare of students are advanced and society is thereby benefited, such institution of higher education is analogous to a private hospital * * * . When, however, in the selection of an officer or servant, due care has been exercised by a private hospital, it is generally held not to be liable for his subsequent act, performed in pursuance or disregarded in defiance of his appointment, unless prior to such occurrence, the charitable institution had knowledge of his unfitness or incapacity.''

The conclusion of the court was thus stated:

"In the case at bar it is evident upon principle and authority that, since the University holds all its property in trust for charitable purposes, it is not liable for the alleged negligent acts of its officers or employees, under the circumstances detailed,

and that in directing a verdict in its favor no error was committed. * * * Though an action may be maintained against an officer, servant, or employee of a charitable institution to recover damages for an injury caused by the act or omission of such person, the action must be against him in his individual, and not in his corporate, capacity, so that, if a recovery is awarded, it will not be discharged from the trust funds."

The second decision of this court which recognized an exemption from liability for negligence in behalf of a non-profit corporation is *O'Neill v. Odd Fellows Home,* 89 Or. 382, 174 P. 148. The defendant in that case maintained a home in Portland for elderly people and orphaned children. It was conducted without profit and as a benevolence. Those facts were pleaded as a defense and, since no reply was filed, they stood admitted. The plaintiff worked in the home as a laundress and was injured while engaged in the course of her employment. Because no reply was filed to the aforementioned plea of the answer, the circuit court entered judgment in favor of the defendant upon the pleadings. The decision of this court, after holding that the employers' liability act was not applicable to the case, said:

"The next question involved is whether, under the admitted facts of the pleadings, the defendant is answerable for a common-law liability."

In sustaining the judgment, the following was quoted from *Hill v. Tualatin Academy,* supra:

" 'In the case at bar it is evident upon principle and authority that, since the University holds all its property in trust for charitable purposes, it is not liable for the alleged negligent acts of its officers or employees, under the circumstances detailed,

and that in directing a verdict in its favor no error was committed.' ''

Having made that quotation, the court buttressed the following statement by a citation to several authorities:

"An action may be maintained against an officer of a charitable institution to recover damages for an injury caused by the negligence of such person, but the action must be against him in his individual, and not in his corporate, capacity, so that, if a recovery is awarded, it will not be discharged from the trust funds."

It will be observed that in that case the plaintiff was not a patron of the refuge established by the trust fund, but was one of its paid employees. It will also be observed that the court employed the trust fund theory. After the decision had stated the above principle, it mistakenly assumed that the defendant corporation was organized under the provisions of the 1872 enactment, which in amended form is now §§ 77-410 to 77-419, O. C. L. A. It is evident that the Odd Fellows Home was a benevolent and not an ecclesiastical corporation, and that being true, it could not have been organized under the 1872 enactment. Having made that mistake, the decision quoted the following from the 1872 act:

"Provided, however, that no part of the resources of said corporation shall ever be used for any other than the object herein named."

It then said that the evident purpose of that proviso was to embrace the trust fund doctrine so that charitable corporations would be exempt from liability for their negligent acts. It is evident that both the premise and the deduction drawn from it were in error. But it nevertheless is a fact that the Tualatin Academy

decision was deemed a precedent. And "one precedent creates another. They soon accumulate and become law."

The third decision of which we shall take notice is *Hamilton v. Corvallis Hospital Association,* 146 Or. 168, 30 P. (2d) 9. In that case the plaintiff had recovered a judgment against the defendant based upon charges that while she was a patient in the defendant's hospital she suffered bodily burns through the defendant's use of a defective electrical heating pad. Although the defendant was organized under the provisions of our statutes governing the formation of non-profit corporations, nevertheless, the plaintiff recovered a judgment against it upon a charge that it was not, in fact, a charitable institution. In sustaining the challenged judgment, this court, through a carefully prepared decision written by Mr. Justice BAILEY, said:

"The overwhelming weight of authority is to the effect that a hospital association organized and conducting its business as a charitable institution is not liable for injuries suffered by its patients due to the negligence of its employees. The courts, however, are not in accord in the theories advanced for such immunity. Most of the decisions are based on one or more of the three following premises, to wit: (1) the doctrine of implied waiver; (2) the trust fund theory; and (3) that of public policy. The courts which base their decisions on implied waiver hold that one who accepts the benefits of either a public or a private charity impliedly exempts the charitable institution from liability for the negligence of its servants in administering the charity. The trust fund doctrine holds that a trust fund can not be used to compensate an injured patient for the negligence of the agents or servants of a charitable hospital, otherwise the trust fund would be

diverted to purposes never intended and would thereby be depleted. The public policy theory is based on the reasoning that, inasmuch as charitable hospitals derive no profit from their work and are founded for the sole purpose of conserving the health and life of all who need their aid, justice and sound policy alike dictate that they should be exempt from the liability attaching to those engaged in enterprises for profit.

"For authorities holding that charitable institutions are not liable for the torts of their employees see the following: * * * ; O'Neill v. Odd Fellows Home, 89 Or. 382 (174 P. 148).

"In all, or practically all, the cases holding that charitable institutions are immune from liability for the negligence of their servants the reasoning is based on the ground that the institutions derive their funds mainly from public or private charity and that their trustees are charged with the duty of administering such funds exclusively for the charitable uses for which they have been donated."

Then follows a development of the trust fund theory, largely through quotation from the authorities.

The attacked judgment was affirmed. In so doing, the decision reviewed evidence which showed that there was a bona fide issue as to the true character of the defendant. Hence, this court was bound to yield effect to the jury's verdict. The quotations which we made were not dictum, but were essential to a disposition of the issue concerning the liability or exemption from liability of the defendant.

The fourth decision is *Napier v. First Congregational Church,* 157 Or. 110, 70 P. (2d) 43. In that case the plaintiff, while in the edifice of the First Congregational Church of Portland, fell down a flight of stairs and was injured. He claimed that his fall was due to

the negligence of the defendants who were the pastor and the trustees of the defendant ecclesiastical corporation, and the corporation itself. We observe from the decision that the plaintiff moved for an order of voluntary non-suit against the corporate plaintiff after the commencement of the trial and that his motion was allowed. From that fact we infer that his counsel had construed the three above-reviewed decisions of this court as committing this state to the rule that religious, benevolent, charitable and educational institutions are exempt from liability for their acts of negligence. In *Hamilton v. Corvallis Hospital Association*, supra, we observe:

> "The plaintiff practically concedes that if the defendant was organized and is operating as a charitable institution it is not liable to plaintiff for the injuries which she suffered."

In fact, the textbook writers and those who contribute articles to the legal journals classify Oregon as a state which employs the trust fund theory and which holds that charitable institutions are exempt from liability for their negligence.

We think it is evident from the foregoing that this court is committed to the view that an eleemosynary institution is exempt from liability for acts of negligence. Both the Tualatin Academy and the Odd Fellows Home decisions employed the exemption rule. The Corvallis Hospital decision reiterated it. Counsel in the Napier case evidently took it for granted that churches and other non-profit corporations were exempt for their acts of negligence. In short, exemption from liability for negligence is the rule of this jurisdiction. It will be observed from the foregoing decisions that exemption exists whether the tort was com-

mitted upon a stranger to the charity or upon one who was receiving its services. Since we have embraced the trust fund theory, it can make no difference whether due prudence was exercised in the selection of the tortious servant or whether he was inadvisedly chosen. The trust fund can not be depleted in either event.

Since the plaintiff urges us to discard the exemption rule, let us look for a moment at the state of authority in other jurisdictions. There is a wide variety of views concerning the liability or exemption from liability of hospitals for their acts of negligence. The variety of views is as great in those states where the rule stems from legislative enactment as in those where the rule emanates from judicial opinion. In a few states charitable corporations are liable for their negligence to the same extent as other corporations and persons. In several states they are completely exempt from liability. In some jurisdictions exemption is dependent upon whether or not the negligent act was performed by a servant in whose selection due care was exercised.

In still others exemption is accorded if the injured person was a recipient of the services of the hospital, but liability is the rule if he was a stranger to it. There is even debate as to who is a stranger and who is a beneficiary. The decisions which recognize exemption from liability assign different reasons for their conclusions, as was pointed out in *Hamilton v. Corvallis Hospital Association,* supra. In addition to the theories therein recounted, some cases take the view that the doctrine of *respondeat superior* is inapplicable to the relationship which exists between a charitable institution and those who serve it. An unusually good classification of all the holdings, state by state, is set forth in *The President and Directors of George-*

*town College v. Hughes,* 130 Fed. (2d) 810, 7 CCH, Negligence Cases, 810. The same decision analyzes at length the theories which have been advanced in support of the exemption rule.

Severe attacks have been made upon the doctrine that a hospital is exempt from liability for its negligence. The most penetrating is *The President and Directors of Georgetown College v. Hughes,* supra. See also *Nicholson v. Good Samaritan Hospital,* 145 Fla. 360, 199 So. 344, 133 A. L. R. 809; 5 CCH, Negligence Cases, 5; *Silva v. Providence Hospital of Oakland,* 14 Cal. (2d) 762, 97 P. (2d) 798; 3 CCH, Negligence Cases, 237. One of the first decisions to criticize the exemption rule and to discard it is *Tucker v. Mobile Infirmary Association,* 191 Ala. 572, 68 So. 4, L. R. A. 1915D 1167. *The President and Directors of Georgetown College v. Hughes,* supra, is a storehouse of citations to texts, decisions and treatises which analyze, support or criticize the doctrine of exemption from liability.

The decisions which criticize the exemption rule emanate chiefly from jurisdictions which had not embraced the rule. We observe that those decisions are frequently pronounced by divided courts; for instance, in *The President and Directors of Georgetown College v. Hughes,* supra, only three of the six members of the court subscribed to the decision. The other three affirmed liability upon a finding of the trial court that the plaintiff was a stranger to the trust. The prevailing opinions in *Silva v. Providence Hospital of Oakland,* supra, and *Tucker v. Mobile Infirmary Association,* supra, were accompanied with sharp dissents.

Much of the criticism which is aimed at the exemption doctrine points out that the dictum of Lord Cottenham, in *Feoffees of Heriot's Hospital,* supra, which

was embraced in *Holliday v. St. Leonard's,* 11 C. B. (N.S.) 192, was later discarded as unsound in *Mersey Docks Trustees v. Gibbs,* L. R. 1, H. L. 93, and *Forman v. Mayor of Canterbury,* L. R. 6, Q. B. 214. The critics point out that *McDonald v. Massachusetts General Hospital,* 120 Mass. 432, being the first American decision which employed the exemption rule, cited *Holliday v. St. Leonard's* without being aware that the authority of that decision had been undermined. Thus, it is claimed that the foundation for the rule is unsound. It may be, however, that this is an instance in which the old saw, "Man's action is always right, but his reason is always wrong" really speaks the truth. We observe, for instance, that in Oregon eleemosynary institutions enjoy freedom from taxation. We also observe that many Oregon municipalities are free from liability for their negligent acts; and we believe that hospitals render public service somewhat comparable to that of municipalities. Universally there is reluctance to render anyone liable for an injury to another which he inflicted while engaged unselfishly in helping others. That reluctance has prompted our legislature to render a driver immune from liability to a nonpaying guest unless his fault was extraordinary. We are certain that exemption from liability for negligence of eleemosynary institutions conforms to the public policy of this state.

Restatement of the Law, Trusts, § 402, thus restates the liability of charities:

"(1) The trustee of a charitable trust is subject to personal liability to third persons for torts committed in the course of the administration of the trust if, but only if, the trustee was personally at fault.

"(2) Except as stated in Subsection (3), a person against whom a tort is committed in the course of the administration of a charitable trust can by a proceeding in equity reach trust property and apply it to the satisfaction of his claim.

"(3) A person receiving benefits under a charitable trust against whom a tort is committed in the course of the administration of the trust cannot reach trust property and apply it to the satisfaction of his claim, unless the trustee was personally at fault."

In 16 Oregon Law Review 357, a writer, after taking note of the doctrine employed in this state, said:

"In Oregon then, if the Legislature, whose duty it is to determine public policy, should deem it advisable to give charitable institutions immunity from tort liability, it is its duty and not the duty of the courts to do so."

The legislature made no change in the rule. The rule which accords to eleemosynary, religious and educational institutions exemption from liability for their acts of negligence has now been the law of this jurisdiction for a third of a century of time. Since its first pronouncement it has been thrice reaffirmed.

The doctrine of *stare decisis* requires us to follow the rule that eleemosynary, religious and educational institutions are exempt from liability for their acts of negligence. If a change is to be made in that rule, it will have to come, as stated in 16 Oregon Law Review 357, from the legislature. The rule pertains, not only to hospitals, but to a wide variety of other institutions. A judicial change in the rule would affect not only the future, but would relate back to the period of limitation. The rule as employed by our courts has become firmly established in this state, and public

policy demands that when an issue, especially one which affects property rights, has been deliberately determined by a court of last resort, it should be deemed settled and closed. We so deem the rule of non-liability now under consideration.

It follows from the above that, in our opinion, the three assignments of error possess no merit. The judgment of the circuit court is affirmed.