Argued July 1, reversed and remanded September 5, petition for rehearing denied October 8, 1963

# HUNGERFORD v. PORTLAND SANITARIUM & BENEVOLENT ASSOCIATION

384 P. 2d 1009

*Byron Glade Birch,* Portland, argued the cause for appellant. With him on the briefs were Duncan &

O'Brien, Virgil Colombo and Frances M. Dudleston, Portland.

*William F. Thomas,* Portland, argued the cause for respondents. With him on the brief were Hollister & Thomas and Raymond J. Conboy, Portland.

Before McAllister, Chief Justice, and Rossman, Perry, Sloan, O'Connell, Goodwin and Denecke, Justices.

## GOODWIN, J.

This is a charitable-immunity case. The only issue is whether the court should now overrule its earlier decisions which conferred upon charitable enterprises immunity from liability for the torts of their servants.

The facts are not remarkable. The plaintiff brought an action for damages for injuries caused by the negligence of a nurse's aide employed by the hospital. We will assume that, for the purposes of this case, the defendant Portland Sanitarium & Benevolent Association is a charitable hospital. Accordingly, if immunity should be law, the hospital would be entitled to its benefits.

Our latest decision fully exploring the problem is *Landgraver v. Emanuel Lutheran,* 203 Or 489, 280 P2d 301 (1955). The majority of this court was then of the opinion that the charitable-immunity exception to the general law of torts was a settled rule and that it ought not to be changed by the court. The dissenting opinion, Brand, J., weighed each of the arguments for such immunity with the arguments against it. Immunity was then, and is now, in general retreat elsewhere. *Mullikin v. Jewish Hospital Assn. of Louisville,* 348 SW2d 930 (Ky 1961), contains a recent

review of the cases. The obsolescence of charitable immunity likewise has been well documented by text writers. See 2 Harper and James, The Law of Torts 1667-1675, §§ 29.16, 29.17 (1956); Prosser and Smith, Cases on Torts 722 (3d ed 1962). We conclude that expediency no longer justifies adherence to a dying doctrine.

Inasmuch as we are now of the opinion that the *Landgraver* case must be overruled, we are confronted with the holdings that this particular change in the law of torts ought to be made, if at all, by the legislature. See, e.g., *Landgraver v. Emanuel Lutheran,* supra at 493-494; *Gregory v. Salem General Hospital,* 175 Or 464, 483, 153 P2d 837 (1944). *Cf.,* Note, 31 Or L Rev 78 (1951), and Note, *Hospital Liability in the New York Court of Appeals: A Study of Judicial Methodology,* 61 Col L Rev 871 (1961).

Accordingly, it is necessary to deal with the issues arising out of both *stare decisis* and the proper function of this court in evolving the law of torts.

■ It is argued that, once having been of the opinion that a particular reform in the law of torts ought to be made in the legislature, this court is forever bound to remain of that opinion, wrong though it may have been. However, it is neither realistic nor consistent with the common-law tradition to wait upon the legislature to correct an outmoded rule of case law. See *Pierce v. Yakima Valley etc. Ass'n,* 43 Wash2d 162, 180-182, 260 P2d 765 (1953) (concurring opinion of Grady, C.J.). Nor is legislative silence as instructive as was supposed in the *Gregory* and the *Landgraver* cases. Legislative indifference to remedies for private wrongs may be common enough in times when the assembly is occupied with a multitude of matters of grave public

concern, but failure to enact a bill is not one of the constitutional methods by which the assembly makes law. Constitution of Oregon, Art IV, § 25. See Hart, *Comments on Courts and Lawmaking,* in Legal Institutions Today and Tomorrow 40, 46 (Paulsen ed 1959).

As was said by Desmond, J., in a decision which, overruling an earlier case, established the right to recover for prenatal injuries:

> "* * * Negligence law is common law * * *.
>
> "* * * * * *
>
> "* * * Legislative action there could, of course, be, but we abdicate our own function, in a field peculiarly nonstatutory, when we refuse to reconsider an old and unsatisfactory court-made rule * * *." Woods v. Lancet, 303 NY 349, 354-355, 102 NE2d 691, 27 ALR2d 1250 (1951).

■ We must likewise reject the defendant's contention that *stare decisis* binds us absolutely to the past. The pull of *stare decisis* is strong, but it is not inexorable. See *State v. Mellenberger,* 163 Or 233, 260, 95 P2d 709, 128 ALR 1506 (1939), which marshalled the authorities and concluded that, even in a criminal case, if the former decision is shown to be clearly in error it ought not to be followed. And see *Woods v. Lancet,* supra, where, in answer to *stare decisis,* the court said:

> "* * * Of course, rules of law on which men rely in their business dealings should not be changed in the middle of the game, but what has that to do with bringing to justice a tort-feasor who surely has no moral or other right to rely on a decision of the New York Court of Appeals * * *?" 303 NY at 354.

■ When litigants come into court, they expect the court to apply to their case the best rule of law available to the court. The fact that a rule has been fol-

lowed for fifty years is not a convincing reason why it must be followed for another fifty years if the reasons for the rule have ceased to exist. Charitable immunity came to Oregon in *Hill v. Tualatin Academy,* 61 Or 190, 121 P 901 (1912). Its history in this state is reviewed in the dissenting opinion in the *Landgraver* case.

■ Ordinarily, in this state, as in most others, the growth of the law of private wrongs has been by judicial decision. See, e.g., *Cowgill, Adm'r v. Boock, Adm'r,* 189 Or 282, 302, 218 P2d 445, 19 ALR2d 405 (1950) (concurring opinion by ROSSMAN, J.), and Keeton, *Creative Continuity in The Law of Torts,* 75 Harv L Rev 463 (1962). Tort law in 1963 differs from tort law in 1863 for the most part because of the work of the courts. When courts have recognized the need for remedies for new injuries, the remedies have been found. For example, liability-without-fault is imposed upon carefully conducted but hazardous operations employing explosives, *Bedell et ux v. Goulter et al,* 199 Or 344, 261 P2d 842 (1953), and upon those employing dangerous aerosols, *Loe et ux v. Lenhardt et al,* 227 Or 242, 362 P2d 312 (1961). To the extent permitted by the state constitution, government is now being held responsible for its wrongs. *Vendrell v. School District No. 26C et al,* 226 Or 263, 360 P2d 282 (1961). We find no continuing reason for adherence to the immunity rule for charities.

■ Upon trial below, the jury awarded the plaintiff a judgment against the negligent servant, but was instructed to return a verdict in favor of the hospital. The verdict established the fault of the servant and the measure of damages. There is no question that the negligent servant was working within the scope

of her employment. It will be proper upon the remand to enter judgment n.o.v. for the plaintiff against the hospital.

Reversed and remanded.

ROSSMAN, J., dissenting.

When the prevailing opinion terminates the exemption of charities from tort liability and subjects them to the same responsibility as industrial enterprises, hospitals will not be the only charities that will bear the brunt of the new order. This court held a half century ago that a charity which was engaged in educational work was immune from tort liability: see *Hill v. Tualatin Academy,* 61 Or 190, 121 P 901. That decision is today overruled. Let us pause for a moment and observe that that decision recognized liability in favor of the plaintiff upon the part of the negligent servant and every negligent officer and trustee of the charity. That part of the decision is not overruled by today's decision. The holding in the Tualatin Academy case merely refused to apply the doctrine of respondeat superior against the charity. The fact that a charity receives no profit or other advantage from its operations is a good reason for distinguishing it from commercial cases in which the doctrine renders the principal liable for the torts of its employees even though the principal did not participate in the tort. We will presently return to that distinction. There are a score or more of charities in addition to hospitals and educational institutions that will feel the effect of today's decision. That statement is not made to render the decision of the majority difficult, but because it serves to illustrate the position which these dissenting views favor. Some of the many charities which will be affected by the new order of events are

the Boy Scouts, the Salvation Army, the YMCA and our numerous children's homes. Each one of them is now liable for the acts of any member of its staff whether he is a volunteer or a paid employee. It is well known that much of the work of organizations such as the Boy Scouts, the Red Cross, and the YMCA is performed by volunteers.

From this day on the rule of respondeat superior will be applied to all charities although in many other phases of our daily activities the principal is not liable, in the absence of statute, for the torts of his subordinates. For example, a public officer, in the absence of statute, is not liable for the wrongs committed by his deputies. *Vendrell v. School District No. 26C et al,* 226 Or 263, 360 P2d 282, in so holding, quoted the following from *Antin v. Union High School District No. 2,* 130 Or 461, 280 P 664, 66 ALR 1271:

> "* * * The relation of master and servant, or of principal and agent, does not exist in such cases, and hence the doctrine of *respondeat superior* does not apply between the directors and such persons."

The following is taken from Restatment of the Law, Trusts, § 402 b:

> "If in the administration of a charitable trust a tort is committed for which the trustee is not personally at fault, the trustee is not personally liable to the person who is damaged thereby. Thus, if the damage is caused by the negligence of a person employed by the trustee in the administration of the trust, the trustee is not liable if he used due care in the selection of the employee. The doctrine of respondeat superior, which would be applicable if the trustee were conducting the enterprise for his own benefit, or even if he were conducting it as trustee of a private trust (see § 264, Comment b), is not applicable to the trustee of a charitable trust."

Since this court has held that neither the relation of master and servant nor that of principal and agent exists between a public officer and his deputy, it is difficult to understand how it can exist between a charity and some good-hearted individual who works in the charity as a volunteer without pay. It is difficult to find a reason why the charity should be held liable in damages for the volunteer's act. The defendant's nurses and assistants served at a financial sacrifice.

The majority speak of legislative "silence" concerning the issue now before us and indicate that possibly "legislative indifference" to it was due to the legislature's "occupation with a multitude of matters of grave concern." As a matter of fact, the legislature has not been indifferent to the issue of the tort liability of charities. The sessions of 1957, 1959, and 1963 were confronted with bills for the repeal of the charities' exemption from tort liability; see H.B. 334 (1957 session); S.B. 131 (1959 session); H.B. 1232 (1963 session); State of Oregon Journals of the House and Senate, 1957, 1959 Legislative Sessions; State of Oregon, Legislative Calendar, 1963 Legislative Session; State of Oregon, Minutes of the Senate Judiciary Committee (1959 Legislative Session); Public hearing on Senate Bill 131, February 24, 1959.

Although as just indicated, three measures have been introduced before the legislature for the repeal of the exemption of charities from tort liability, none has been successful. All failed to attract sufficient support. None of them was enacted into law.

It is seen from the facts just indicated that while this case was pending before this court and we were being urged to overrule our previous holdings (several

in number) that recognized in charities exemption from tort liability, the 1963 bill was pending before the legislature and that body was asked to terminate the exemption. The 1963 bill, like its two recent predecessors, was unsuccessful. The legislature declined to adopt it.

This court, however, takes a view this day different from the legislature which adjourned only 90 days ago. It today does what the legislature declined to do—that is, it terminates the charities' immunity. Thereby there occurs a clash in the points of view of the two departments of the state's government that are concerned with what the law of this state should be. I readily concede that the majority has a legal right to adopt the course which it has taken, but I do not believe, for reasons which I will presently state, that it should do so.

Had the legislature terminated the charities' immunity from tort liability, its enactment would not have had any retrospective operation. It would not have revived any old claims. It would have affected only claims that occurred after the measure was adopted. In short, it would have operated only prospectively. Article IV, § 28, Constitution of Oregon, says that the legislature's statutes shall take effect "ninety days from the end of the session." But, when this court pronounces the law upon a subject under scrutiny, its utterances take effect at once. The court does not make the law; it merely finds it. Therefore, when it pronounces it, it must necessarily be assumed that its pronouncement represents the law as it always was. Accordingly, when the majority this day holds that there is no immunity upon the part of charities from tort liability, its holding is retrospective as well

as prospective. All claims against charities are affected except those barred by the statute of limitation.

The problem of immunity from tort liability is more difficult than the proponents of repeal indicate. The state and many of its counties maintain hospitals. The patients in them are numerous. Very likely, they far outnumber those in private hospitals. Although many of the state's patients suffer from mental disorder, those who suffer from that malady receive hospital treatment for their other afflictions, and one of the state's larger hospitals accepts patients for a wide range of ailments. The state also conducts many educational institutions. The students who attend them greatly exceed in number those in the private schools. Some of the state's institutions are the University of Oregon, Oregon State University, and Portland State College. There are also the large number of high schools and grade schools.

Although the majority today terminate immunity from tort liability for our private hospitals, such as the defendant, and likewise terminate the exemption from tort liability of our private colleges, immunity from liability remains for all of the state's institutions. The state cannot be sued: *Vendrell v. School District No. 26C et al,* 226 Or 263, 360 P2d 282.

If immunity from tort liability is to be ended for the private institutions, it should also be terminated for those operated by the state. There should be no discrimination. When the state ends the immunity for the private institutions and requires them to bear the resulting burden, it should impose a similar requirement upon itself. The state is far more capable of bearing the burden than are the private institutions. The legislature has the power to impose the burden: Constitution of Oregon, Article IV, § 24; and *Vendrell*

*v. School District,* supra. The discrimination in favor of the state that will result from today's decision cannot be justified.

In short, the problem resolved by the majority today is part of a much larger issue. The legislature, and not this court, should solve it. When the 1963 legislative session adjourned 90 days ago and declined to repeal the charities' immunity from tort liability, it settled the issue. No one contends that anything has happened in the last 90 days which requires this court to take a course different from that selected by the legislature. Therefore, I believe we ought to abide by the legislature's decision and not overrule it in addition to a long line of our own decisions. We must not compete with the legislature in law making.

Finally, I am by no means persuaded that in the instance of a private charity the doctrine of respondeat superior should render the charity liable for the torts of a servant unless the charity was somehow at fault. The doctrine of respondeat superior is not above criticism although it performs the commendable task of subjecting the industrial master to liability for the torts of his servant. But in those instances the master has derived a profit or gain in the operation. In an instance such as the one before us, there has been no profit—none was ever expected—and the law permitted none. Therefore, the very foundation for the doctrine respondeat superior is absent from this case.

I dissent.

PERRY, J., joins in this dissent.