DECISION
Plaintiff appeals from the Clackamas County Assessor's denials of exemptions from ad valorem property tax for four categories of personal property owned or leased by Plaintiff and located at a diagnostic imaging (DI) facility in Canby. Trial was held in the courtroom of the Oregon Tax Court on June 17, 2010 and August 24, 2010, before Magistrate Jeffrey S. Mattson presiding. Plaintiff appeared through its counsel, Peter F. Stoloff Kathleen Rastetter, Clackamas County Counsel, appeared on behalf of defendant. Timothy Blanchard (Blanchard), Jason Metcalf (Metcalf), Gerald Labunski (Labunski), Deborah Adami (Adami), and Richard Davies, D.O. (Davies) testified on behalf of Plaintiff. Shari Anderson (Anderson), Amanda Olsen (Olsen), and Linda Dunn (Dunn) testified on behalf of Defendant.
Plaintiff's exhibits 1-8, 12, 13, 15-19, 24-26, 29-32, 34, 36-38, 40, 41, 45, and 46 were offered and received without objection. Defendant objected to the relevancy of Plaintiff's exhibits 4, 9, 10, 11, 20 through 23, 27, and 33, but not to their admissibility.[1] Plaintiff's exhibit 42 was offered and received over the objection of Defendant. Defendant's exhibits D, E, H, L, P, Q, R, S, and T were offered and received without objection. *Page 2 
 I. STATEMENT OF FACTS
During the 2008-2009 tax year, Plaintiff was organized as a nonprofit corporation under the laws of Oregon. (Ptf's Ex 5 at 20.)[2] During that tax year, Plaintiff's Restated Articles of Incorporation stated that Plaintiff was organized and operated "exclusively for charitable, educational and scientific purposes * * *." (Id.) Specifically, Plaintiff was organized to "build, erect, purchase, maintain, equip, manage and operate a hospital or hospitals to care for the sick and injured." (Id.) Plaintiff's articles further stated that no part of Plaintiff's earnings, income or assets were to inure to the benefit of any party with a private interest in the operations of Plaintiff. (Ptf's Ex 5 at 20-21.) Plaintiff's Restated Bylaws provided that all receipts in excess of expenses were to be applied "to the equipment and enlargement [of the hospital], to the care of charity patients, and to carry out the purposes [of Plaintiff's] organization." (Ptf's Ex 6 at 13.) On liquidation, Plaintiff's remaining assets were to be distributed to a nonprofit fund, foundation, or corporation "organized and operated exclusively for charitable, educational and scientific purposes." (Ptf's Ex 5 at 21.) All authority over Plaintiff's operations was vested in a 15-person board of directors. (Ptf's Ex 5 at 21.) Plaintiff's bylaws required that eight of the fifteen positions on the board be occupied by members of Plaintiff's medical staff. (Ptf's Ex 6 at 14.) Plaintiff's directors were not paid for their service on the board. (Ptf's Ex 34 at 27-28.)
Plaintiff's revenues in the tax year at issue derived primarily from charging patients for medical care. (Ptf's Ex 34 at 8.) However, Plaintiff often did not receive payment at the rate established by Plaintiff for the services rendered. (Id.) Private insurance companies negotiated *Page 3 
with Plaintiff for reduced rates for their subscribers, and many of Plaintiff's patients are insured through Medicare and Medicaid, both of which frequently reimbursed Plaintiff at a rate below the cost to Plaintiff of delivering services. (Ptf's Ex 34 at 8, Ptf's Ex 36 at 2-3.) In addition, Plaintiff provides a twenty percent discount to uninsured patients paying for services out of pocket. (Ptf's Ex 8 at 1).
Plaintiff also maintained a charity policy whereby patients were eligible for financial assistance on the basis of need. Patients with a household income of less than 220 percent of the federal poverty level were eligible for a 100% discount on medical services. (Ptf's Ex 8 at 5.) Patients with a household income between 220 and 400 percent of the federal poverty level were eligible for discounted medical care on a sliding scale, though eligibility was reduced for patients with non-cash assets — other than equity in their homes — in excess of $50,000. (Id.) Patients seeking financial assistance were required to apply for the program and Plaintiff went to lengths to assess the extent of each patient's ability to pay for care.(Id.) Plaintiff also utilized any available government assistance that a patient may have qualified for. (Id.) Blanchard, Adami and Metcalf each testified that Plaintiff does not refuse medically necessary treatment to patients due to inability to pay.[3]
Plaintiff operates a diagnostic imaging (DI) facility in Canby. The Canby DI facility is licensed as a satellite location of Plaintiff. (Ptf's Ex 9 at 4-5.) Blanchard testified that patients at the Canby DI facility are considered outpatients of Plaintiff's hospital. Labunski testified that the all staff at the Canby DI facility are Plaintiff's employees, that Plaintiff considers the Canby *Page 4 
DI facility to be part of Plaintiff's broader DI department, and that many administrative tasks, such as scheduling patient appointments at the Canby DI facility, are actually performed at Plaintiff's main campus in Oregon City.
On April 1, 2008, Plaintiff filed applications with the Clackamas County Assessor to exempt four categories of property owned or leased by Plaintiff and used at the Canby DI facility: MRI equipment; X-Ray equipment; a Mammography system; and "[a]ll personal property as reported on [Plaintiff's] Confidential Personal Property Return for 2008." (Def s Exs C, G, K, and O.)[4] In four letters, each dated January 26, 2009, the assessor denied each of Plaintiff's applications for exemptions, stating in each denial that the property at issue in each application was not being "exclusively used for charitable purposes." (Def s Exs D, H, L, and P.) On April 22, 2009 Plaintiff filed three separate Complaints in the Magistrate Division of the Oregon Tax Court appealing from the exemption denials; a fourth Complaint was filed on April 23, 2010, also appealing an exemption denial. Each of these complaints appealed the denial for specific equipment: TC-MD No 090791B (the MRI equipment), TC-MD No 090792B (the X-Ray equipment), TC-MD No 090793B (the Mammography system) and TC-MD No 090794B (the personal property "as reported on [Plaintiff's] Confidential Personal Property Return for 2008."). (Def s Exs A, E, I, and M.)
Plaintiff alleges that the properties listed in each application were used by a charitable institution in its charitable work and thus exempt from taxation under ORS 307.130. Defendant *Page 5 
argues that the Canby DI facility was not a charitable organization and that the uses the DI equipment at issue in these consolidated cases were put to cannot be characterized as "exclusively charitable," as required under ORS 307.130(2)(a).
 II. ANALYSIS
In these consolidated cases the court must determine whether the four categories of personal property that Plaintiff applied to have exempted are exempt from taxation. ORS 307.130[5] provides in pertinent part:
 "(2) Upon compliance with ORS 307.162, the following property owned or being purchased by * * * benevolent, charitable and scientific institutions shall be exempt from taxation:
 (a) Except as provided in ORS 748.414, only such real or personal property, or proportion thereof, as is actually and exclusively occupied or used in the * * * benevolent, charitable or scientific work carried on by such institutions."
ORS 307.112 permits organizations entitled to claim exemption under ORS 307.130 for property that the organization owns to likewise claim exemption for property that the organization leases, as long as "[t]he property is used by the lessee * * * in the manner, if any, required by law for the exemption of property owned * * * by it * * * [and] [i]t is expressly agreed within the lease * * * that the rent payable * * * has been established to reflect the savings below market rent resulting from the exemption from taxation." ORS 307.112(1). Defendant does not allege that the lease agreements involved in this case lack the express agreement required by ORS 307.112(1). Therefore, these cases may be resolved by determining whether Plaintiff fulfills the requirements of ORS 307.130. *Page 6 
A. Is Plaintiff is a Charitable Institution?
To be a charitable institution under ORS 307.130, an entity must satisfy a three-prong test. First, charity must be the "primary, if not sole, object" of the organization. Second, "the organization must be performing in a manner that furthers its charitable object." Third, "the organization's performance must involve an element of gift or giving."SW Oregon Pub. Def. Services v. Dept. of Rev.,312 Or 82, 89, 817 P2d 1292 (1991).
Defendant primarily argues that Plaintiff satisfies none of the three elements of the three-prong test because Plaintiff charges patients for medical services. (Def's Post Trial Brief at 7-15.) The court disagrees. It has long been the rule in Oregon that hospitals can be "charitable" for purposes of exemption from property tax despite charging fees for treatment. See Corporation of Sisters of Mercy v. Lane Co.,123 Or 144, 155, 261 Pac 694 (1927) (holding "[w]here a hospital can otherwise be classed as a charitable institution, the fact that patients who are able to pay are required to do so does not deprive it of its charitable character." (Citation omitted.); Ev. Lutheran GoodSam. Soc. v. Dept. of Rev, 5 OTR 14, 18-20 (1972) (holding a hospital is "permitted to charge its patients reasonable fees and still be regarded as charitable."); Mercy Medical Center, Inc. v. Dept. ofRev., 12 OTR 305, 306 (1992) ("[T]he fact that nonprofit hospitals charge for their services will not deprive them of being characterized as charitable."). The court therefore must determine whether Plaintiff satisfies the three-prong test without reference to the fact that Plaintiff charges fees for medical care.
1. Charity as Plaintiff's primary, if not sole, object.
Plaintiff's articles and bylaws are prima facie evidence of the objectives of a corporation. Dove Lewis Mem. Emer. Vet.Clinic v. Dept. of Rev., 301 Or 423, 427, 723 P2d 320 (1986). *Page 7 
Plaintiff's articles of incorporation in effect during the tax year in question state that Plaintiff was organized "exclusively for charitable, educational and scientific purposes" with an aim to "build, * * * equip, manage and operate a hospital or hospitals to care for the sick and injured." (Ptf's Ex 5 at 20; Ptf's Ex 6 at 13.) Plaintiff's bylaws and articles both specifically provided that the hospital was not to be operated for the financial gain of any person having an interest in Plaintiff. (Id.) Caring for the sick and injured without an eye to personal profit is in and of itself a charitable purpose. Ev. LutheranGood Sam. Soc, 5 OTR at 20-21, quoting Carl Zollman,American Law of Charities, 154 § 219 (1924) ("Furnishing board, lodging and nursing to needy people is among the most familiar and useful of charities, and that which constitutes such an institution a charity is that it does not furnish these things for profit." (Internal quotation marks omitted.). All other powers that the articles of incorporation and the bylaws granted to Plaintiff and its directors during the tax year at issue appear to have been subservient to that purpose. (Ptf's Ex 5 at 20; Ptf's Ex 6 at 13.) The court concludes that during the tax year at issue charity was Plaintiff's "primary, if not sole, object."
2. Whether Plaintiff's activities furthered Plaintiff's charitablepurpose.
It is undisputed that Plaintiff operated a hospital to care for the sick and injured during the tax year at issue. In addition, while Plaintiff generated an excess of revenues over expenses, that excess amounted to only 1.8 percent of Plaintiff's expenses.[6] Blanchard testified that even nonprofit hospitals need to generate an excess of revenues in order to remain viable. The court finds this testimony credible and persuasive in light of the witness' expertise in hospital finance. *Page 8 
It does appear, however, that Plaintiff's operations resulted in some degree of "profits or private advantages to * * * officials in charge" of Plaintiff. See Methodist Homes, Inc. v. Tax Com.,226 Or 298, 311, 360 P2d 293 (1961) (court stated that identifying the presence or absence of benefits to the founders or officials in charge is particularly important in determining the charitable character of an institution). Plaintiff's federal income tax return for the tax year at issue indicates that Plaintiff's directors were not paid for their services as directors. (Ptf's Ex 34 at 28.) However, Plaintiff's bylaws required eight of the fifteen spots on Plaintiff's board of directors to be filled by members of Plaintiff's medical staff. (Ptf's Ex 6 at 14.) These directors presumably benefitted from Plaintiff's operations in the sense that they each drew their compensation as employees from Plaintiff's revenues. However, each employee/director received no additional compensation for assuming additional responsibilities.
Nonprofit hospitals are generally recognized as existing for the public good, rather than for the benefit of private individuals.Mercy Medical Center, Inc., 12 OTR at 307. Here the benefit derived by Plaintiff's employees who also were members of the medical staff appears to have been unconnected to their role as Plaintiff's directors. The overlap between Plaintiff's paid employees and Plaintiff's unpaid directors who were the same individuals does not necessarily detract from Plaintiff's charitable purpose. In fact, there is evidence to the contrary that having individuals with day-to-day practical experience facilitated corporate decision making and expedited its ability to provide public service. Based on the evidence, the court concludes there was no failure of Plaintiff to operate in a fashion that overall furthered its charitable goal. *Page 9 
3. The presence of a "gift or giving."
There is no dispute that Plaintiff charges its patients for medical care. As discussed above, however, this fact in and of itself does not deprive an otherwise charitable hospital of its charitable character. When an institution charges for its services, Oregon courts look to four factors to determine whether the "gift or giving" requirement is met:
 "(1) Whether the receipts are applied to the upkeep, maintenance and equipment of the institution or are otherwise employed;
 "(2) Whether patients or patrons receive the same treatment irrespective of their ability to pay;
 "(3) Whether the doors are open to rich and poor alike and without discrimination as to race, color or creed;
 "(4) Whether charges are made to all and, if made, are lesser charges made to the poor or are any charges made to the indigent."
SW Public Def Services v. Dept. of Rev.,312 Or 82, 87, 817 P2d 1292 (1991) (quoting OAR 150-307.130-A(4)(d)(C)).
Starting with the first factor, Blanchard testified at trial that Plaintiff's excess revenues over expenditures are spent to maintain and upgrade the hospital's facilities and equipment. There is no evidence to counter this testimony.
With regard to the second factor, Metcalf s testimony and the exhibits provided by the parties pertaining to taxpayer's charity policy show that Plaintiff made extensive inquiries into patients' financial assets to determine whether or not to grant any given patient financial assistance in accordance with Plaintiff's charity policy. (Ptf's Ex 8, Def s Ex S) However, that does not in and of itself amount to discrimination on the basis of ability to pay for medical treatment. "[C]harity does not lose its character as such when it becomes sagacious." Ev. Lutheran Good Sam. Soc., 5 OTR at 19 (quotingGregory v. Salem General Hospital,175 Or 464, 469-70, 153 P2d 837 (1944).). Plaintiff's stated policy was to provide needed *Page 10 
medical treatment regardless of the patient's ability to pay. (Ptf's Ex 8 at 1.) There is no evidence in the record that a patient's ability to pay is a substantial factor in Plaintiff's decision to provide needed medical treatment; rather, it is a factor in how much, if anything, Plaintiff charges for medical care. The court considers the second factor satisfied.
On the third factor, Blanchard testified that Plaintiff does not discriminate on the basis of race, color, or creed. There is no evidence in the record from which the court can conclude otherwise.
Finally, during the tax year at issue, Plaintiff's charity policy provided for reduced charges for the poor and entirely free treatment for those with an income below 220 percent of the federal poverty level. (Ptf's Ex 8 at 1-2.)[7] While Plaintiff does bill some indigent patients for treatment, Metcalf testified that this was a requirement imposed on Plaintiff by the Centers for Medicare and Medicaid Services. There is no evidence to the contrary, and the court is disinclined to count a requirement imposed on Plaintiff by the federal government against Plaintiff. The court concludes that Plaintiff's activities meet the "gift or giving" requirement. Therefore, the court finds that during the tax year at issue Plaintiff was a charitable institution for the purposes of ORS 307.130.[8] *Page 11 
B. Whether the Property is "actually and exclusively" used in thecharitable work of Plaintiff.
In determining whether property is "actually and exclusively" used in the charitable work of a charitable institution, Oregon courts look to the primary use of the property. GermanApost. Christ. Church v. Dept. of Rev.,279 Or 637, 642, 569 P2d 596 (1977). The primary use of the property must "substantially contribute to" or be "reasonably necessary for" the charitable purpose of the organization. Id.; Mercy MedicalCenter, Inc., 12 OTR at 308. When a charitable institution uses property directly to accomplish its charitable mission, there is no question that the property "substantially contributes" to such mission. Mercy Medical Center, Inc., 12 OTR at 308.
The court concludes that the primary use of the personal property at issue in each of these consolidated cases was in direct furtherance of Plaintiff's charitable purpose. As discussed above, Plaintiff's charitable purpose is to provide healthcare to patients on a not-for-profit basis. It is undisputed that Plaintiff used all of the personal property at issue in these cases to operate a facility to provide DI services to aid in diagnosing and treating injuries and illnesses. There is no evidence in the record from which the court can find any other primary purpose for the properties.
It also appears that the properties were used by Plaintiff on a not-for-profit basis. Labunski testified that Plaintiff considered the Canby DI facility part of Plaintiff's hospital, that the staff at the Canby DI facility were Plaintiff's employees, that much of the administration of the Canby DI clinic actually took place from Plaintiff's Oregon City campus, and that the Canby DI facility operated under the same rules as any other part of Plaintiff's hospital. Blanchard *Page 12 
testified that the Canby DI facility contributes to, and is funded from, the revenues of Plaintiff's hospital. Nothing in the record contradicts this testimony. The evidence supports the conclusion that Plaintiff operated the Canby DI facility like it operated all other parts of Plaintiff's hospital.
The court concludes that the Plaintiff used the property at issue in these consolidated cases to accomplish Plaintiff's charitable purpose — providing healthcare on a not-for-profit basis. The "actual and exclusive use" requirement of ORS 307.103(2)(a) is therefore satisfied with regard to the personal property at issue in each of these consolidated cases.
 III. CONCLUSION
Based on careful consideration and review of the testimony and evidence, the court concludes that the personal property at issue in each of these consolidated cases is "actually and exclusively" used by Plaintiff in furtherance of Plaintiff's charitable work and is exempt from property taxation. Now, therefore,
IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is granted.
Dated this ___ day of March 2011.
If you want to appeal this Decision, file a Complaint in theRegular Division of the Oregon Tax Court, by mailing to:1163 State Street, Salem, OR 97301-2563; or by hand delivery to:Fourth Floor, 1241 State Street, Salem, OR.
 Your Complaint must be submitted within 60 days after the date ofthe Decision or this Decision becomes final and cannot be changed.
 This document was signed by Presiding Magistrate Jill A. Tanneron March 30, 2011. The Court filed and entered this documenton March 30, 2011.
[1] To the extent this Decision relies on any exhibit to which Defendant objected, the court finds the exhibit relevant and Defendant's objection is overruled.
[2] At the time of writing, Plaintiff remains organized as a nonprofit corporation under the laws of Oregon. However, On October 1, 2009 Plaintiff joined Providence Health System. Hence, the Restated Articles of Incorporation in effect during the tax year at issue are no longer in effect. Nonetheless, the court looks to the articles and bylaws in effect during the 2007-2008 tax year because ORS 307.130(2)(a) requires the court to determine Plaintiff's status and Plaintiff's use of the properties at issue during the tax year for which Plaintiff seeks the exemptions at issue in these consolidated cases.
[3] Purely elective surgeries must be paid for in full prior to surgery. (Ptf's Ex 8 at 4.)
[4] Plaintiff leases the X-Ray equipment, the MRI equipment, and the Mammography equipment from Key Government Finance, Inc. The owned property consists of several pieces of DI or other medical equipment, but also includes furniture, office equipment, and sundry other personal property in use at the Canby DI clinic. (Def's Ex O at 2-8.)
[5] All references to the Oregon Revised Statutes (ORS) are to the 2007 edition.
[6] Plaintiff's excess of revenues over expenses was $1,663,016 during the 2008-2009 tax year. (Ptf's Ex 34 at 1.) Plaintiff's total expenses amounted to $90,558,885. (Id.) $1,663,016 is 1.8 percent of $90,558,885, rounded to the nearest tenth of a percent.
[7] Defendant asserts that Plaintiff only writes off charges in excess of $100 to charity. This appears to be a misreading of a document entitled "In-house Uncollectable Review Guideline" that Plaintiff included as part of Plaintiff's exhibit 35. The document provides instructions to Plaintiff's staff for dealing with patients that the staff suspect would qualify for financial assistance, but who have not completed an application for financial assistance. (Ptf's Ex 35 at 14.) Staff members are directed to look for specified signs of financial distress and, if such indicators are found, write off all but a set amount of the patient's bill to charity. (Id.) If the patient subsequently completes a financial assistance application or explains why the patient cannot complete an application, the patient becomes eligible for financial assistance in dealing with the undischarged amount. (Id.)
[8] Defendant contends that for exemption to be proper, the Canby DI facility must also qualify as a charitable institution in its own right. This argument is not well taken. The applications for exemptions at issue in these consolidated cases were made by Plaintiff for property that is owned or leased by Plaintiff. Therefore, the relevant question is whether Plaintiff on the whole is a charitable institution. Mercy Medical Center, 12 OTR at, 307. That is not to say that the Canby DI facility — insofar as it adhered to the policies governing Plaintiff's operations generally — would not satisfy the three prong test on its own. *Page 1